JEFFREY D. WOHL (Cal. State Bar No. 096838)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone:    (415) 856-7000
Facsimile:    (415) 856-7100
jeffwohl@paulhastings.com

LINDSEY C. JACKSON (Cal. State Bar No. 313396)
PAUL HASTINGS LLP
515 S. Flower Street, 25th Floor
Los Angeles, California 90071
Telephone:    (213) 683-6000
Facsimile:    (213) 627-0705
lindseyjackson@paulhastings.com

Attorneys for Defendant
Target Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINNAMON MILLS, individually, on a representative basis, and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>TARGET CORPORATION; a Minnesota corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | No. 5:20-cv-01460 JGB (KKx)<br><br>**DEFENDANT TARGET CORPORATION'S OPPOSITION TO PLAINTIFF CINNAMON MILLS'S MOTION FOR CLASS CERTIFICATION**<br><br>Date:          June 28, 2021<br>Time:          9:00 a.m.<br>Courtroom:     1 (3470 Twelfth St., Riverside)<br>Judge:         Hon. Jesus G. Bernal<br><br>Action filed:   June 10, 2020 (state court)<br>Action removed: July 22, 2020<br>Trial date:     December 14, 2021 |

# TABLE OF CONTENTS

*Page*

Table of Authorities ........................................................................................... ii

I.  INTRODUCTION/SUMMARY OF ARGUMENT ................................. 1

II.  THE COURT SHOULD DECIDE TARGET'S MOTION FOR SUMMARY JUDGMENT BEFORE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION ................................................................................. 3

III.  THE COURT SHOULD DENY CLASS CERTIFICATION BECAUSE PLAINTIFF CANNOT SHOW SHE SUFFERED A COGNIZABLE INJURY ................................................................................................ 3

    A.  Target Pays Vacation—Whether When Taken or When Cashed Out at Termination—at the Hourly Base Rate and Does Not Include Shift Differentials. ............................................................................... 3

    B.  Because Labor Code Section 227.3 Does Not Require Vested Vacation to Be Paid upon Termination at a Higher Rate Than It Would Be Paid If the Vacation Were Taken, Plaintiff Did Not Suffer a Cognizable Injury. ............................................................. 5

IV.  IF THE COURT NEVERTHELESS FINDS THAT CERTIFICATION IS APPROPRIATE, THE CLASS SHOULD BE LIMITED TO THOSE TARGET TEAM MEMBERS WHO, LIKE PLAINTIFF, TERMINATED WITH A VESTED-VACATION BALANCE WHILE THE COVID-19 SHIFT DIFFERENTIAL WAS IN EFFECT ............................................. 6

    A.  The COVID-19 Shift Differential Plaintiff Received Was Different From Ordinary Shift Differentials at Target. ................................. 6

    B.  Because of the Numerous Complexities in Ordinary Shift Differentials That Do Not Correspond to Vested Vacation, Class Certification Properly Could Not Be Granted on the Basis of Ordinary Shift Differentials Received by Team Members. ................................. 8

    C.  Plaintiff's Failure to Propose a Viable Trial Plan Underscores Why a Certified Class Should Not Include Ordinary Shift Differentials. ............... 11

V.  CONCLUSION.................................................................................... 12

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Amchen Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).........................................................................5, 11

*Blackwell v. SkyWest Airlines, Inc.*,
  245 F.R.D. 453 (S.D. Cal. 2007) ..................................................... 5

*Braun v. Safeco Ins. Co. of Am.*,
  No. CV 13-00607 BRO, 2014 U.S. Dist. LEXIS 184123
  (C.D. Cal. Nov. 7, 2014) .................................................................11

*Campbell v. Best Buy Stores, L.P.*, No. LA CV12-07794 JAX (SHx), 2014
  U.S. Dist. LEXIS 190308 (C.D. Cal. Aug. 15, 2014) .................... 10

*Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*,
  821 F. 3d 1069 (9th Cir. 2016) ........................................................ 3

*De Leon v. Standard Ins. Co.*,
  No. 2:15-cv-07419-ODW(JC), 2016 U.S. Dist. LEXIS 60044
  (C.D. Cal. May 5, 2016) ................................................................... 3

*Drumm v. Morningstar, Inc.*,
  695 F. Supp. 2d 1014 (N.D. Cal. 2010)........................................... 5

*Dukes v. Wal-Mart Stores, Inc.*,
  603 F. 3d 571 (9th Cir. 2010), *rev'd on other grounds*,
  564 U.S. 338 (2011).......................................................................... 5

*Ervin v. Os*,
  No. 08 C 1091, 2009 U.S. Dist. LEXIS 148791
  (N.D. Ill. Feb. 12, 2009) .................................................................11

*Garcia v. Sun Pac. Farming Co-op*,
  No. CVF 06-0871 LJO TAG, 2008 U.S. Dist. LEXIS 111969
  (E.D. Cal. May 14, 2008), *aff'd*, 359 F. App'x 724 (9th Cir. 2009) ...........11

*Gonzales v. Comcast Corp.*,
  No. 10-cv-01010-LJO-BAM, 2012 U.S. Dist. LEXIS 196, at *56 (E.D.
  Cal. Jan. 3, 2012) ......................................................................... 9, 10

*Gonzalez v. Officemax N. Am.*,
  No. CV 07-04839 JVS MLGX, 2012 U.S. Dist. LEXIS 163853
  (C.D. Cal. Nov. 5, 2012)..................................................................12

*Hanon v. Dataproducts Corp.*,
  976 F. 2d 497 (9th Cir. 1992) .......................................................... 5

*In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 135 (C.D. Cal. Oct. 22,
  2007) ................................................................................................ 10

LEGAL_US_W # 108327558.1

# TABLE OF AUTHORITIES
### *(cont'd)*

*Page*

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
  993 F.3d 774 (9th Cir. 2021) ................................................................ 5, 11

*In re Paxil Litig.,*
  212 F.R.D. 539 (C.D. Cal. 2003) .................................................................. 12

*Romero v. Securus Techs., Inc.,*
  331 F.R.D. 391 (S.D. Cal. 2018) .................................................................... 5

*Schwarz v. Meinberg,*
  No. CV-13-00356-BRO, 2016 U.S. Dist. LEXIS 99998
  (C.D. Cal. July 15, 2016) ............................................................................... 3

*Util. Consumers' Action Network v. Sprint Sols., Inc.,*
  259 F.R.D. 484 (S.D. Cal. 2009) ................................................................. 12

*Wright v. Schock,*
  742 F.2d 541 (9th Cir. 1984) ......................................................................... 3

*Zinser v. Accufix Research Inst., Inc.,*
  253 F. 3d 1180 (9th Cir. 2001) ................................................................... 11

**Statutes, Regulations and Rules**

Cal. Lab. Code § 227.3 ....................................................................... 1, 4, 5, 8

Fed. R. Civ. P. 23(b)(3)(D) .......................................................................... 11

# I.    INTRODUCTION/SUMMARY OF ARGUMENT

Noticed for hearing at the same time as plaintiff's motion for class certification is Target's motion for summary judgment (ECF 49).  Under long-recognized principles of efficiency and fairness, Target's motion should be decided first, before the Court addresses class certification.  If the Court grants summary judgment, plaintiff's motion for class certification becomes moot.

As for plaintiff's motion, it should be denied for the same reasons that Target's motion for summary judgment should be granted:  Upon her termination, plaintiff was correctly paid her vested vacation at her hourly base rate, the same rate that would have applied had she taken the vacation rather than having it cashed out upon her termination.  Target's consistent policy and practice of paying vacation at the current base hourly rate—whether when it is taken or when it is cashed out upon termination—complies with California Labor Code section 227.3, which requires that vested vacation at termination be paid at the same "final rate" of vacation pay that would be used if the vacation were taken.  Therefore, plaintiff has suffered no injury that makes her a proper class plaintiff.

If the Court nevertheless were inclined to grant class certification, the class should be limited to those Target team members who, like plaintiff, terminated between March 22, 2020, and July 4, 2020, with a vested-vacation balance and who, plaintiff contends, should have been paid their vested vacation at a rate that included the special $2.00/hour COVID-19 shift differential Target was paying at the time.  Due to the extra efforts made by Target team members during the pandemic, Target paid the COVID-19 shift differential for all hours worked between March 22, 2020, and July 4, 2020.  Only those team members who terminated during that time with a vested-vacation balance are similarly situated to plaintiff; like plaintiff, all were not paid the COVID-19 shift differential as part of their vested-vacation payout, and the claim they should have been can be adjudicated on a classwide basis if the COVID-19 shift differential was supposed to have been included (which Target continues to dispute).

Plaintiff instead wants her proposed class to include all team members who

terminated with a vested-vacation balance at any time in the four-year period before she filed suit if, during the workweek of their termination, they received *any* shift differential, not just the COVID-19 shift differential. But unlike the COVID-19 shift differential, Target's other shift differentials (the "ordinary shift differentials") were payable only for certain work hours; whether a particular team member received an ordinary shift differential depended on what shifts the team member worked, what hours within those shifts the team member worked, and even what hours the team member worked on a particular day. Significantly, plaintiff herself did not earn any ordinary shift differentials in her last week of employment at Target, and therefore she is not part of the expanded class she has proposed.

If plaintiff's proposed expanded class were certified, there would be no consistent, much less principled way, to determine which ordinary shift differentials should be counted as part of the team member's "final rate" of vacation pay, and, thus, whether the team members who received ordinary shift differentials in their last week worked have even suffered an injury. That is particularly true when one considers the wide range of vested-vacation balances that bore no relationship to work schedules. Upon termination, some team members were owed as little as 0.1 hour and others as much as 463.34 hours, with thousands of unique balances in between.

When, as here, a plaintiff's claims are not typical of the class; not all class members have suffered the injury alleged; and there is not a manageable way to adjudicate the claims on a classwide basis, class certification should be denied. Underscoring this, plaintiff has not proposed a trial plan for the broader class she proposes, likely because she cannot propose a plan that would make the trial manageable.

Accordingly, if class certification were granted, it should be limited to those similarly situated to plaintiff—those who terminated between March 22, 2020, and July 4, 2020, with a vested-vacation balance and who, according to plaintiff, should have been paid their vested-vacation balance at a rate that included the COVID-19 shift differential.

///

## II.   THE COURT SHOULD DECIDE TARGET'S MOTION FOR SUMMARY JUDGMENT BEFORE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Target has moved for summary judgment against all of plaintiff's claims; the motion has been noticed for hearing at the same time as plaintiff's motion for class certification. (ECF 49.)   The Court should decide Target's motion before incurring for itself and the parties the burden of resolving class certification.   "[A] district court has no need to entertain ... [an] attempt to certify a class without a claim," as is the case here.   *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F. 3d 1069, 1085 (9th Cir. 2016) (finding plaintiff's request for reconsideration of motion for class certification of rounding claim moot where court properly granted summary judgment on that claim).   Thus, "[u]nder the proper circumstances—where it is more practicable to do so and where the parties will not suffer significant prejudice—the district court has discretion to rule on a motion for summary judgment before it decides the certification issue." *Wright v. Schock*, 742 F.2d 541, 543-44 (9th Cir. 1984) (affirming denial as moot of class certification motion based on prior summary judgment ruling); *Schwarz v. Meinberg*, No. CV-13-00356-BRO (PLAx), 2016 U.S. Dist. LEXIS 99998, at *7-8 (C.D. Cal. July 15, 2016) (finding where "potential class members will not be prejudiced by this order of proceedings," it is more efficient to decide defendants' motion for summary judgment prior to plaintiff's motion for class certification); *see also De Leon v. Standard Ins. Co.*, No. 2:15-cv-07419-ODW(JC), 2016 U.S. Dist. LEXIS 60044, at *15 (C.D. Cal. May 5, 2016) (same).

The Court should decide Target's motion for summary judgment first, before proceeding to class certification.

## III.   THE COURT SHOULD DENY CLASS CERTIFICATION BECAUSE PLAINTIFF CANNOT SHOW SHE SUFFERED A COGNIZABLE INJURY

### A.   Target Pays Vacation—Whether When Taken or When Cashed Out at Termination—at the Hourly Base Rate and Does Not Include Shift Differentials.

As explained in its motion for summary judgment, Target's consistent policy and practice has been to pay vacation, whether when taken or when cashed out upon

termination, at the team member's then-current hourly base rate.  Declaration of Michael Brewer in Support of Defendant Target's Motion for Summary Judgment (ECF 49-2) ("Brewer MSJ Decl."), ¶ 10.  Accordingly, when plaintiff's employment terminated on May 1, 2020, she was paid her 18.63 hours of vested vacation at her then-current hourly base rate of $13.00 per hour, the same rate at which her vacation would have been paid had she taken it as a continuing employee.  Deposition of Cinnamon Mills ("Mills Depo.") at 142:7-17, 143:14-16, 144:12-15, 146:15-19, Exh. 17 (Declaration of Jeffrey D. Wohl in Support of Defendant Target Corporation's Motion for Summary Judgment (ECF 49-3), Exh. A); Brewer MSJ Decl., ¶ 5, Exh. B.

In this action, however, plaintiff contends she was underpaid under California Labor Code section 227.3 because Target did not include her $2.00 per hour COVID-19 shift differential in paying her vested-vacation balance.  Second Amended Complaint (ECF 43) ("SAC"), ¶¶ 1, 2, 5, 6.  Section 227.3 provides in relevant part:  "[W]henever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served …"  Cal. Lab. Code § 227.3.  Plaintiff contends that the term "final rate" as used in section 227.3 means the employee's final rate of *earnings*, not the employee's final rate of vacation pay.  Therefore, she argues, her vested vacation should have been paid at a rate that included her COVID-19 shift differential, rather than just her hourly base rate, which would have applied had she taken her vacation as an active employee rather than being cashed out at termination.  At the time, Target was paying plaintiff and all other non-exempt employees the temporary COVID-19 shift differential for all hours worked because of the pandemic, but that shift differential (like all other shift differentials Target paid) did not apply to vacation when taken or cashed out when the team member terminated.  Brewer MSJ Decl., ¶ 8.

///

///

**B. Because Labor Code Section 227.3 Does Not Require Vested Vacation to Be Paid upon Termination at a Higher Rate Than It Would Be Paid If the Vacation Were Taken, Plaintiff Did Not Suffer a Cognizable Injury.**

It is axiomatic that "[a] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchen Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (quotation marks and citations omitted). It also is settled that courts may "consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *Hanon v. Dataproducts Corp.*, 976 F. 2d 497, 509 (9th Cir. 1992) (citation omitted); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 409 (S.D. Cal. 2018) ("A district court's analysis will often ... require looking behind the pleadings, even to issues overlapping with the merits of the underlying claims.") (*quoting Dukes v. Wal-Mart Stores, Inc.*, 603 F. 3d 571, 581 (9th Cir. 2010), *rev'd on other grounds*, 564 U.S. 338 (2011)). For example, in *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453 (S.D. Cal. 2007), the court looked to state overtime law and concluded that that plaintiff lacked standing to pursue a class overtime claim because she herself had been paid for overtime. *Id.* at 463-64.

Here, plaintiff lacks standing to represent the putative class because she did not suffer an injury from Target's payment of her vested vacation at her hourly base rate, the same rate that would have been used had she taken the vacation as a continuing employee. Under Labor Code section 227.3, that was entirely proper. *See Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1020 (N.D. Cal. 2010); *see also* Memorandum in Support of Defendant Target Corporation's Motion for Summary Judgment (ECF 49-1) at 5-11.

Because plaintiff did not suffer a cognizable injury, her claims properly cannot be certified. *Amchen*, 521 U.S. at 625-26 ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citations and quotation marks omitted). *See also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 791 n.7 (9th Cir. 2021) ("The presence of uninjured parties in a certified class also raises serious standing implications under Article III. The federal court system is reserved only for those that have suffered an injury.").

## IV.  IF THE COURT NEVERTHELESS FINDS THAT CERTIFICATION IS APPROPRIATE, THE CLASS SHOULD BE LIMITED TO THOSE TARGET TEAM MEMBERS WHO, LIKE PLAINTIFF, TERMINATED WITH A VESTED-VACATION BALANCE WHILE THE COVID-19 SHIFT DIFFERENTIAL WAS IN EFFECT

### A.  The COVID-19 Shift Differential Plaintiff Received Was Different From Ordinary Shift Differentials at Target.

As explained above, in consideration of their efforts during the pandemic, Target paid a special, $2.00 per hour COVID-19 shift differential to all team members for all hours they worked between March 22, 2020, and July 4, 2020.  Brewer MSJ Decl., ¶ 7, Exh. C.

By contrast, Target paid other, non-COVID-19 shift differentials (usually $0.50 or $1.00 per hour) ("ordinary shift differentials") to team members for hours worked at certain times of the day.  Brewer MSJ Decl., ¶ 6.  The schedules of team members who earn ordinary shift differentials vary widely.  Declaration of Michael Brewer in Opposition to Plaintiff's Motion for Class Certification ("Brewer Cert. Opptn. Decl."), ¶ 4.  Some team members earning ordinary shift differentials work 40-hour weeks, while others work as few as 10 hours a week or something in between.  *Id.*  Some of those team members work the same number of hours week to week, while others have varying work hours.  *Id.*  Some team members exclusively work shifts when ordinary shift differentials are applicable.  *Id.*  Other team members may work an occasional shift when ordinary shift differentials are applicable, while the majority of their shifts are not subject to those shift differentials.  *Id.*  Still others may work shifts when some hours are covered by ordinary shift differentials, while other hours are not.  *Id.*  Still other team members have changing schedules from week to week, with some hours subject to ordinary shift differentials and some not.  *Id.*

Furthermore, vested-vacation balances upon termination range widely and do not necessarily bear any relationship to scheduled work hours.  Brewer Cert. Opptn. Decl., ¶ 6.  Under Target's policy, team members accrue anywhere from 40 to 160 vacation hours per year, and have their annual vacation balances capped from 60 to 240 hours.  Brewer MSJ Decl., ¶ 10, Exh. D.  Since team members can take vacation in whatever fractional or whole-number hourly increments they wish, how many hours they have left in their vested-

vacation balances differs from team member to team member.  Brewer Cert. Opptn. Decl., ¶ 5.  Indeed, the vested-vacation balances for the putative class members ranged widely. As explained in the accompanying Declaration of Paul White, Ph.D., in Opposition to Plaintiff Cinnamon Mills's Motion for Class Certification ("White Decl."), for that part of the putative class period ending on July 4, 2020 (the time period for which Dr. White has the payroll data), the vested vacation hours paid out to the putative class members ranged from as little as 0.01 hour to as much as 463.34 hours, with 3,263 unique values in between. The distribution of the hours among putative class members is as follows:



LEGAL_US_W # 108327558.1

White Decl., ¶ 10.  For the part of the putative class period ending on March 21, 2020 (before payment of the COVID-19 shift differential began), the vested vacation hours paid out to the putative class members also ranged from 0.01 hours to 463.34, with 2,692 unique values in between.  The distribution of the hours is as follows:



Distribution of Vested Vacation Hours Among Terminating Target Team Members—June 10, 2016-March 21, 2020

*Id.*, ¶ 11.

**B.** **Because of the Numerous Complexities in Ordinary Shift Differentials That Do Not Correspond to Vested Vacation, Class Certification Properly Could Not Be Granted on the Basis of Ordinary Shift Differentials Received by Team Members.**

As argued in Target's pending motion for summary judgment and section III, *supra*,

-8-

California Labor Code section 227.3 did not require Target to pay plaintiff's vested vacation upon termination at a rate that included her COVID-19 shift differential because her hourly base rate applied to her vacation, whether when taken or when cashed out, and therefore plaintiff has no claim and class certification should not be granted at all.  But if the Court nevertheless is inclined to grant class certification, the class should be limited to those team members truly similarly situated to plaintiff—those who terminated between March 22, 2020, and July 4, 2020, when the COVID-19 shift differential was in effect, with a vested-vacation balance and who, plaintiff contends, should have been paid their vested vacation at a rate that included the COVID-19 shift differential.  At least those team members share the same claim as plaintiff—that their "final rate" of vacation pay should have included the extra $2.00 per hour COVID-19 shift differential.

By contrast, there is no consistent, manageable, classwide way to determine the "final rate" of vacation pay when it comes to ordinary shift differentials and, as a result, to find whether those putative class members who earned ordinary shift differentials in their last week worked even suffered an injury.  *See Gonzales v. Comcast Corp.*, No. 10-cv-01010-LJO-BAM, 2012 U.S. Dist. LEXIS 196, at *56 (E.D. Cal. Jan. 3, 2012) ("While the Ninth Circuit does not appear to have addressed this precise issue, it is generally accepted that classes should not be certified where not every member of the proposed classes can prove with common evidence that they suffered impact.").  As explained above, vested-vacation hours bear no necessary relationship to a particular schedule, much less hours subject or not subject to ordinary shift differentials.  A terminating team member may have a vested-vacation balance of only 0.1 hour (far less than his total mix of ordinary shift differential hours and non-shift differential hours), or as many as 463.34 hours (many multiples more than his mix of those hours).  A team member may have terminated in a work week in which she worked no shift differential hours (but might have had she not terminated).  She may have terminated in a work week in which she was specially assigned to work ordinary shift differential hours, even though she normally would not work those hours, or *vice-versa*.

Individualized inquiries for these putative class members predominate.  By what consistent, manageable classwide principle would the trier of fact decide which vested-vacation hours should be placed in the "ordinary shift differential" bucket and which should be placed in the "non-shift differential bucket"?  None of these considerations applies to plaintiff—who did not earn any ordinary shift differentials in her last week of employment—or putative class members like her.  For them, under plaintiff's theory of the case, one need only know how many vested-vacation hours they had; since all were subject to the COVID-19 shift differential, under plaintiff's theory they all would get an extra $2.00 per hour for their vested vacation.  That is not so for all of the other team members plaintiff wishes to include in her putative class on the basis of the ordinary shift differentials they received.  Ultimately, "[t]he damages determination at issue here is not one that merely seeks to identify the amount of damages to each putative class member.  This determination, rather, is one which requires the Court to analyze whether [Target] is liable to each and every putative class member at all.  Such an individualized liability determination predominates over any common issues regarding [Target's vacation pay-out] practices and their relation to the resolution of the lawsuit." *Gonzales*, 2012 U.S. Dist. LEXIS 196, at *58; *see also Campbell v. Best Buy Stores, L.P.*, No. LA CV12-07794 JAX (SHx), 2014 U.S. Dist. LEXIS 190308, at *41 (C.D. Cal. Aug. 15, 2014) (individualized "inquiries as to the *fact* of damage, *i.e.*, injury, may defeat class certification") (emphasis supplied) (internal citations omitted).  *See also In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 135 (C.D. Cal. Oct. 22, 2007) ("[I]f individual issues concerning fact of damages predominate, class certification is precluded.").

Moreover, it bears emphasizing that plaintiff herself *did not* earn any ordinary shift differentials in her last week of employment at Target.  Brewer MSJ Decl., ¶ 5, Exh. B; Mills Depo. at 144:20-145:16 (ECF 49-3).  Yet plaintiff's motion for class certification defines the class as:

All former non-exempt employees that were employed by Defendants in the State of California that, from June 10, 2016 to the present, (a) received shift

differential pay *during the last workweek worked*, (b) had vested vacation owed upon separation of employment, and (c) upon separation of employment, were paid for vested vacation at a rate that did not include the shift differential pay.

ECF 48 at 3, (emphasis supplied).  Thus, even if the fact of injury could be determined on a classwide basis, since plaintiff cannot complain that ordinary shift differentials she herself did not earn during her last week of employment should have been included in the rate her own vested-vacation was paid out, she cannot represent those who did earn those ordinary shift differentials in their last week of employment at Target; she lacks standing to pursue that theory.  *Amchen*, 521 U.S. at 625-26; *Olean*, 993 F.3d at 791 n.7

When the plaintiff's claims are not typical of the broader class the plaintiff seeks to certify, and there are too many differences among the putative class members to support classwide treatment, class certification should be denied.  *See Garcia v. Sun Pac. Farming Co-op*, No. CVF 06-0871 LJO TAG, 2008 U.S. Dist. LEXIS 111969, at *36 (E.D. Cal. May 14, 2008) (plaintiff does not meet typicality burden where her experiences are "typical of **some** of the proposed class members but **atypical** of other of the proposed class members") (emphasis in original), *aff'd*, 359 F. App'x 724 (9th Cir. 2009); *Braun v. Safeco Ins. Co. of Am.*, No. CV 13-00607 BRO (PLAx), 2014 U.S. Dist. LEXIS 184123, at *45 (C.D. Cal. Nov. 7, 2014) (denying class certification where "record reflects significant differences among class members' work experiences"); *Ervin v. Os*, No. 08 C 1091, 2009 U.S. Dist. LEXIS 148791, at *25-26 (N.D. Ill. Feb. 12, 2009) (denying motion for class certification where court concluded individual issues would predominate due, in part, to "the lack of uniformity in regards to the scheduling of shifts").

### C.   Plaintiff's Failure to Propose a Viable Trial Plan Underscores Why a Certified Class Should Not Include Ordinary Shift Differentials.

That a class including those who were paid just ordinary shift differentials should not be certified is made even more apparent by plaintiff's failure to present a viable trial plan for how the claims of the class she proposes could be adjudicated on a classwide basis.

-11-

In moving for class certification, plaintiff should propose such a plan.  *See* Fed. R. Civ. P. 23(b)(3)(D); *Zinser v. Accufix Research Inst., Inc.*, 253 F. 3d 1180, 1190 (9th Cir. 2001) (finding no abuse of discretion where district court declined certification because "there was no manageable trial plan adequate to deal with individualized issues and variances in state law"); *Util. Consumers' Action Network v. Sprint Sols., Inc.*, 259 F.R.D. 484, 486 (S.D. Cal. 2009) ("The party seeking certification of a nationwide class bears the burden of demonstrating a suitable and realistic plan for trial of the class action."); *In re Paxil Litig.*, 212 F.R.D. 539, 548 (C.D. Cal. 2003) ("At least in the Ninth Circuit, the presentation of a preliminary, unworkable trial plan, does not suffice for class certification.").

Here, plaintiff did not propose a trial plan, and cannot do so, because she cannot propose a plan that fairly accounts for the myriad differences in ordinary shift differential scheduling, non-shift-differential scheduling, actual hours worked, and vested-vacation hours.  Plaintiff also has not articulated how a "final rate" of vacation pay would be determined given the widely varying amounts of shift differential hours worked in a work week and vested-vacation hours across team members.  The individualized inquires required to determine what each team member's "final rate" would be cannot be managed through a class-wide trial.  *See, e.g.*, *Gonzalez v. Officemax N. Am.*, No. CV 07-04839 JVS MLGX, 2012 U.S. Dist. LEXIS 163853, at *23 (C.D. Cal. Nov. 5, 2012) (due to individualized inquires, "the [e]mployees' claims will not benefit from any economies of scale, so that the alternative—separate actions—will be no more costly to them").

## V.    CONCLUSION

In the interest of efficiency and fairness, the Court should decide Target's motion for summary judgment first, before addressing plaintiff's motion for class certification. Even if summary judgment is denied, class certification should be denied because plaintiff did not suffer any cognizable injury by being paid her vested-vacation at her hourly base rate, the same rate that would have applied had she taken the vacation rather than being cashed out, instead of a rate that included her COVID-19 shift differential.  Finally, if the Court is inclined to grant class certification, the class should be limited to those Target

1    team members who terminated between March 22, 2020, and July 4, 2020, with a vested-

2    vacation balance because only those individuals are similarly situated to plaintiff and do

3    not have individualized differences that would make class treatment inappropriate.

4          Dated:  June 7, 2021.                    JEFFREY D. WOHL
                                                    LINDSEY C. JACKSON
5                                                   PAUL HASTINGS LLP

6

7                                            By:  _____*/s/ Jeffrey D. Wohl*_____
                                                         Jeffrey D. Wohl
8                                                    Attorneys for Defendant
                                                      Target Corporation
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-13-