Brian J. Mankin, Esq. (SBN 216228)
brian@lmlfirm.com
Peter J. Carlson, Esq. (SBN 295611)
peter@lmlfirm.com
LAUBY, MANKIN & LAUBY LLP
4590 Allstate Drive
Riverside, CA  92501
Tel:   (951) 320-1444
Fax:   (951) 320-1445

Attorneys for Plaintiff, on a representative basis and on behalf of all others
similarly situated

[*Additional counsel for Plaintiff listed on the next page*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINNAMON MILLS, individually, on a representative basis, and on behalf of all others similarly situated;<br><br>Plaintiff,<br>vs.<br>TARGET CORPORATION, a Minnesota Corporation; and DOES 1 through 20, inclusive;<br><br>Defendants. | Case No.:  5:20-cv-01460-JGB-KK<br>[*Assigned to Hon. Jesus G. Bernal*]<br><br>**PLAINTIFF CINNAMON MILLS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br><u>Hearing</u><br>Date:        June 28, 2021<br>Time:        9:00 a.m.<br>Place:        Courtroom 1<br><br>Complaint Filed:  June 10, 2020<br>Removal Date:    July 22, 2020<br>Trial Date:        December 14, 2021 |

Deepak Gupta (*Pro Hac Vice* pending)
GUPTA WESSLER PLLC
1900 L Street NW, Suite 312
Washington, DC 20036
(202) 888-1741
*deepak@guptawessler.com*

Neil K. Sawhney (SBN 300130)
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
*neil@guptawessler.com*

# TABLE OF CONTENTS

INTRODUCTION .......................................................................................1

STATEMENT OF THE CASE....................................................................2

   I.     Statutory Background.................................................................2

   II.    Factual Background...................................................................3

ARGUMENT ............................................................................................4

   I.     Target violated Labor Code section 227.3 by refusing to pay out Mills'
accrued vacation time at her "final rate" of pay.........................................4

       A.    This Court's previous rejection of Target's statutory interpretation is
law of the case. ...........................................................................4

       B.    Section 227.3's plain text requires employers to pay departing
employees at their "final rate," including shift differentials.................7

       C.    Target's atextual interpretation of section 227.3 finds no support in
either precedent or policy....................................................11

   II.    Summary judgment is inappropriate on Mills' claim for waiting-time
penalties, because Target has not established any "good faith" defense. 16

CONCLUSION ........................................................................................19

# TABLE OF AUTHORITIES

**Federal Cases**

*Am. Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc.*
2017 WL 5892255 (D. Haw. Sept. 27, 2017) .......................................................6

*BedRoc Ltd., LLC v. United States,*
541 U.S. 176 (2004) ................................................................................................9

*Bollinger v. Oregon,*
172 F. App'x 770 (9th Cir. 2006) ..........................................................................6

*Brunozzi v. Cable Commc'ns, Inc.,*
851 F.3d 990 (9th Cir. 2017) .................................................................................7

*Dommers v. Davol, Inc.,*
2018 WL 6582831 (S.D. Cal. May 24, 2018) ......................................................13

*Drumm v. Morningstar, Inc.,*
695 F. Supp. 2d 1014 (N.D. Cal. 2010) ...............................................................11

*Equal Rts. Ctr. v. Equity Residential*,
798 F. Supp. 2d 707 (D. Md. 2011) .......................................................................6

*Garcia v. Healy,*
2019 WL 1230439 (N.D. Cal. Mar. 15, 2019) .......................................................6

*Gatdula v. CRST Van Expedited, Inc.,*
2011 WL 3652491 (C.D. Cal. June 3, 2011) .........................................................9

*Guadiana v. State Farm Fire & Cas. Co.,*
2009 WL 3763693 (D. Ariz. Nov. 10, 2009) ........................................................6

*Huynh v. Harasz,*
2016 WL 2757219 (N.D. Cal. May 12, 2016) .......................................................6

*Iljas v. Ripley Ent. Inc.,*
403 F. Supp. 3d 793 (N.D. Cal. 2019) ...................................................................2

*Khrapunov v. Prosyankin,*
931 F.3d 922 (9th Cir. 2019) ...............................................................................12

*Labriola v. Bank of Am., Nat. Ass'n,*
2012 WL 1657191 (N.D. Cal. May 10, 2012) ......................................................17

*Lopez v. United Parcel Serv., Inc.,*
2010 WL 728205 (N.D. Cal. Mar. 1, 2010) .........................................................17

*Novoa v. GEO Grp., Inc.*,
  2018 WL 3343494 (C.D. Cal. June 21, 2018) ...................................................12

*PDK Labs Inc. v. Ashcroft*,
  338 F. Supp. 2d 1 (D.D.C. 2004) ..........................................................................6

*Pepper v. United States*,
  562 U.S. 476 (2011)...............................................................................................5

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*,
  957 F. Supp. 1184 (D. Nev. 1997) ........................................................................6

*Sevilla v. Aarons, Inc.*,
  2019 WL 2879874 (C.D. Cal. Mar. 25, 2019).......................................................8

*Thomas v. Bible*,
  983 F.2d 152 (9th Cir. 1993) ................................................................................6

*United States v. Alexander*,
  106 F.3d 874 (9th Cir. 1997) ................................................................................5

*Wang v. Chinese Daily News*,
  435 F. Supp. 2d 1042 (C.D. Cal. 2006) ................................................................8

**State Cases**

*Bell v. H.F. Cox, Inc.*,
  209 Cal. App. 4th 62 (2012) ..........................................................................2, 11

*Bernard v. Foley*,
  39 Cal. 4th 794 (2006) ...........................................................................................9

*Boothby v. Atlas Mechanical, Inc.*,
  6 Cal. App. 4th 1595 (1992) ................................................................................15

*Brinker Rest. Corp. v. Superior Court*,
  53 Cal. 4th 1004 (2012) .......................................................................................15

*Diaz v. Grill Concepts Servs., Inc.*,
  23 Cal. App. 5th 859 (2018) ................................................................................18

*Donohue v. AMN Servs., LLC*,
  11 Cal. 5th 58 (2021) ...........................................................................................15

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
  42 Cal. 4th 554 (2007) .........................................................................................13

*Gonzalez v. Downtown LA Motors, LP*,
  215 Cal. App. 4th 36 (2013) ................................................................................16

*Hale v. Morgan,*
  22 Cal. 3d 388 (1978) ........................................................................18

*Heritage Residential Care, Inc. v. Div. of Lab. Standards Enf't,*
  192 Cal. App. 4th 75 (2011) ..............................................................16

*In re D.B.,*
  58 Cal. 4th 941 (2014) .........................................................................9

*Kao v. Holiday,*
  12 Cal. App. 5th 947 (2017) ................................................................3

*Kilby v. CVS Pharmacy, Inc.,*
  63 Cal. 4th 1 (2016) ...........................................................................12

*Larkin v. Workers' Comp. Appeals Bd.,*
  62 Cal. 4th 152 (2015) .........................................................................7

*Los Angeles Cty. Metro. Trans. Auth. v. Alameda Produce Mkt., LLC,*
  52 Cal. 4th 1100 (2011) .....................................................................14

*Maldonado v. Epsilon Plastics, Inc.,*
  22 Cal. App. 5th 1308 (2018) ..................................................... 17, 18

*Mendoza v. Nordstrom, Inc.,*
  2 Cal. 5th 1074 (2017) .........................................................................9

*Meza v. Portfolio Recovery Associates, LLC,*
  6 Cal. 5th 844 (2019) ...........................................................................7

*Nishiki v. Danko Meredith, APC,*
  25 Cal. App. 5th 883 (2018) ...........................................................3, 16

*People v. Valencia,*
  3 Cal. 5th 347 (2017) ...........................................................................9

*Prachasaisoradej v. Ralphs Grocery Co., Inc.,*
  42 Cal.4th 217 (2007) ........................................................................15

*Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.,*
  102 Cal. App. 4th 765 (2002) ............................................................16

*Suastez v. Plastic Dress-Up Co.,*
  31 Cal. 3d 774 (1982) ............................................................. 2, 11, 14

*Ward v. United Airlines, Inc.,*
  9 Cal. 5th 732 (2020) .........................................................................15

*Wilde v. City of Dunsmuir,*
  9 Cal. 5th 1105 (2020) .......................................................................10

**Statutes**

Cal. Labor Code § 203 ...................................................................................3, 16

Cal. Labor Code § 227.3 .............................................................................. passim

**Rules and Regulations**

8 Cal. Code Regs. § 13520(a) ................................................................. 3, 17, 18

**Other Authorities**

Wright & Miller, *Federal Practice and Procedure*, § 2713 at 233 (2d. ed. 1998) ...6

**INTRODUCTION**

California law requires that employers pay out employees' accrued and unused vacation time as wages upon termination. And it mandates that employers do so at the employee's "final rate" of pay. Cal. Labor Code § 227.3. Here, it is undisputed that plaintiff Cinnamon Mills' final rate of pay was $15 per hour, which included a shift differential rate she was paid for working during the COVID-19 pandemic. Her employer, Target, was therefore obligated under California law to pay out her unused vacation at that rate. But it did not do so. Instead, it decided to calculate her vacation pay based on her lower, base hourly rate.

That decision violated section 227.3's plain text. The California Supreme Court has held that courts interpreting state law must begin with the statute's text. And when that language is clear, as here, statutory construction should end with the text as well. But, in its motion for summary judgment, Target does not even claim to base its preferred interpretation on the statute's text. And how could it? Its interpretation—that vested vacation should be paid at the same rate Target would have paid had the vacation been taken earlier—would delete the word "final" out of section 227.3 altogether. That Target has no answer to this textual problem is reason alone to scrap its interpretation. But it is not alone: Target's interpretation also clashes with this Court's precedents, raises practical and administrability concerns, and defies California's public policy in favor of protecting workers.

Indeed, for these reasons, this Court already rejected Target's interpretation of section 227.3 when denying the company's motion to dismiss. Yet Target's summary-judgment motion simply repackages that motion, without offering any new legal arguments or authorities in support of its atextual interpretation. The company has simply offered no reason that the Court should revisit its previous conclusion. The Court should, therefore, hold once again that section 227.3 required Target to pay out Mills' vacation time at her "final rate" of pay, and accordingly deny Target's motion for summary judgment.

## STATEMENT OF THE CASE

### I.   Statutory Background.

Labor Code section 227.3 sets out California's requirement for the payment of unused vacation time: "Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, *all vested vacation shall be paid to him as wages at his final rate* in accordance with such contract of employment or employer policy respecting eligibility or time served." Cal. Lab. Code § 227.3 (emphasis added). This statute reflects the understanding that, under California law, "vacation pay is not a gratuity or a gift, but is, in effect, additional wages for services performed." *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 779 (1982). An employer is not required to pay for vacation, but "[w]hen, by policy or contract, an employer offers vacation pay, it 'constitutes deferred wages for services rendered.'" *Iljas v. Ripley Ent. Inc.*, 403 F. Supp. 3d 793, 800 (N.D. Cal. 2019) (quoting *Suastez*, 31 Cal. 3d at 784). Accordingly, a terminated employee must "be paid in wages for a pro rata share of his vacation pay." *Id.*

As noted, the statute requires that employers pay vested vacation at the employee's "final rate in accordance with such contract of employment or employer policy respecting eligibility or time served." Cal. Lab. Code § 227.3. California courts have held that this "language means that the employer's policy determines the amount of vacation time earned, typically based on the employee's length of employment and position held." *Bell v. H.F. Cox, Inc.*, 209 Cal. App. 4th 62, 75 (2012) (citing *Suastez*, 31 Cal. 3d at 782–83).

California Labor Code section 201(a) provides that, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." If an employer "willfully" fails to pay the wages as specified in section 201(a), "the wages of the employee shall continue as a penalty

from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Labor Code § 203(a); *see also* 8 Cal. Code Regs. § 13520(a). "The purpose of section 203 is to compel the prompt payment of earned wages." *Nishiki v. Danko Meredith, APC*, 25 Cal. App. 5th 883, 891 (2018); *see Kao v. Holiday*, 12 Cal. App. 5th 947, 962 (2017) (noting that "[t]he prompt payment of an employee's earned wages is a fundamental public policy of this state.").

## II.   Factual Background

As Target recounts in its motion (at 3–5), the material facts here are undisputed. Plaintiff Cinnamon Mills worked for Target from 2006 to 2008, and from 2016 to 2020. Like the rest of the putative class members, she was paid on an hourly basis by a base hourly rate of pay as well as additional hourly shift differential pay for certain time periods. During her final weeks of working at Target, for example, she was paid a base rate of $13 per hour plus additional shift differential compensation, in light of the COVID-19 pandemic, of $2 per hour for every hour worked. *See* Ex. C to Carlson Decl. (Target temporary pay differential policy) (Dkt. 48-2); Ex. D to Carlson Decl. (Mills' final pay statement) (Dkt. 48-2). Her effective and actual hourly rate during her final pay period therefore was $15 per hour. *Id*. But, when Mills departed the company, Target declined to pay out her unused vacation time at her actual "final rate" of pay. Instead, the company paid out her vacation at only her $13 base rate—short-changing her of nearly 15% of her accrued vacation pay. *Id.*

Target claims that, in doing so, it followed its "consistent practice" of paying out departing employees' accrued vacation time at their base hourly rate, as opposed to their final rate of pay. Dkt. 49-1 at 3–4. Nevertheless, Target's Director of Employee Relations and designated Rule 30(b)(6) representative, Michael Brewer, testified that: (1) Target has no written policy regarding the rate at which it pays

vested vacation (Deposition of Michael Brewer ("Brewer Depo.")[1] 49:19-22 and 50:10-22); (2) Target's written vacation policy is silent as to whether shift differential is included in vacation (Brewer Depo. 67:17-21; *see* Ex. B to Carlson Decl. (Target Vacation Policy) (Dkt. 48-2)); and (3) there are no other policies or documents that describe the rate at which Target pays vested vacation to employees (Brewer Depo 48:21-24, 56:19-22, 57:6-9). Brewer also admitted that Target does not tell California employees like Mills the rate at which they will be paid for vacation (Brewer Depo 55:11-23), and has never provided employees with any documents that "outlines their vacation pay rate" (Brewer Depo 56:17-18.) In fact, according to Brewer, Target never considered whether to include shift differentials in vacation pay before this lawsuit was filed. (Brewer Depo 65:10-15; 67:22-25 and 68:1.)

## ARGUMENT

## I. Target violated Labor Code section 227.3 by refusing to pay out Mills' accrued vacation time at her "final rate" of pay.

Section 227.3 means just what it says: Employers must pay out departing employees' "vested vacation . . . as wages" at their "final rate" of pay. Cal. Labor Code, § 227.3. This interpretation—which this Court has already accepted—is the only construction that gives meaning to the statute's plain text. Target's atextual interpretation of section 227.3, by contrast, conflicts with the text, precedent, and the statute's purpose. It should be rejected.

### A. This Court's previous rejection of Target's statutory interpretation is law of the case.

As we explain below, the plain text of Labor Code section 227.3 requires that employers calculate the vacation pay for departing employees like Mills at their "final rate" of pay, which includes shift differentials. But this Court need not even

---

[1] The relevant pages of the Brewer deposition are attached as Exhibit A to the Declaration of Peter J. Carlson filed in support of Plaintiff's Opposition.

consider the parties' arguments about the proper interpretation of the statute. That is because the Court has *already* decided the issue: In denying Target's motion to dismiss, this Court squarely held that "principles of statutory construction weigh in favor of [Mills'] interpretation." Dkt. 20, at 5. In other words, it concluded—as a matter of law—that "the 'final rate' under Section 227.3 refers to the departing employee's regular rate of pay at termination, including hourly shift differentials." *Id.* at 4.

The Court's previous conclusion is the law of the case. That "doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506 (2011); *see United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). ("Under the 'law of the case' doctrine, a court is generally precluded from reconsidering an issue that has already been decided by the same court."). And here, this law of the case disposes of Target's summary-judgment motion. Under the interpretation that this Court adopted in denying the motion to dismiss, Labor Code section 227.3 required Target to pay out Mills' unused vacation time at her "regular rate" of pay, including shift differentials. And it is undisputed that the company did not. Instead, in accordance with its routine practice, Target calculated Mills' vacation pay based solely on her base rate. That violated section 227.3.

Target nevertheless asserts that the Court's prior decision "does not preclude granting Target summary judgment now, since this motion presents the Court with an evidentiary record that was absent on the motion to dismiss." Dkt. 49-1 at 2; *see also id.* at 12 (arguing that "[a] prior order denying a motion to dismiss does not preclude an order granting a motion for summary judgment, since on summary judgment, the court is presented with the evidence"). But this assertion carries a fatal (and obvious) flaw: Nothing about Target's statutory-interpretation argument turns on *the evidence*. Indeed, Target does not cite to the record once in its argument about section 227.3. *See* Dkt. 49-1 at 5–10. For good reason: The "evidentiary record" is

entirely irrelevant to resolving the proper interpretation of section 227.3. That is solely a legal question—and one that this Court has already decided.

For this reason, Target's reliance on the cases it cites (at 12) is misplaced. All the cited cases involved arguments that depended on the parties' development of the record after the pleading stage. *See id.* Those cases simply do not apply when, as here, the law of the case solely "addresses *legal issues* decided by a court." *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 957 F. Supp. 1184, 1195 (D. Nev. 1997). As the Ninth Circuit explained, "the law of the case is still applicable" when "no evidence relevant" to the legal issue to be decided is presented at summary judgment. *Bollinger v. Oregon*, 172 F. App'x 770, 771 (9th Cir. 2006); *see, e.g., Am. Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc.*, 2017 WL 5892255, at *6 (D. Haw. Sept. 27, 2017); *Huynh v. Harasz*, 2016 WL 2757219, at *21 (N.D. Cal. May 12, 2016); *Guadiana v. State Farm Fire & Cas. Co.*, 2009 WL 3763693, at *6 (D. Ariz. Nov. 10, 2009); *see also Equal Rts. Ctr. v. Equity Residential*, 798 F. Supp. 2d 707, 721 (D. Md. 2011) (noting that "[a] denial of a motion to dismiss would be dispositive of a later summary judgment motion . . . if the factual showing were essentially congruent with the factual allegations made in the complaint").

To be sure, this Court has "some discretion in applying" the law-of-the-case doctrine. *Garcia v. Healy*, 2019 WL 1230439, at *3 (N.D. Cal. Mar. 15, 2019) (citing *Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993)). Nevertheless, the Court "should only reopen a previously resolved question if (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." *Id.* But Target has not attempted to show that even one of these discretionary factors apply here.

The bottom line is that "a summary judgment motion 'may not be made on the same grounds and with the same showing that led to the denial of a previous motion to dismiss.'" *PDK Labs Inc. v. Ashcroft*, 338 F. Supp. 2d 1, 7 (D.D.C. 2004)

(citing Wright & Miller, *Federal Practice and Procedure*, § 2713 at 233 (2d. ed. 1998)). "Even if different language is used in a summary judgment motion than in a previous motion to dismiss, if the same legal theory supports both motions, the disposition of the motion to dismiss may serve as the law of the case and on these grounds, a court may similarly dispose of a motion for summary judgment." *Id.* Yet that is precisely what Target has done here: It uses its summary-judgment motion to relitigate the exact same legal argument that it made in its motion to dismiss. Even worse, Target doesn't even try to use "different language" in its motion for summary judgment or support its argument with new or different authorities. Its statutory-interpretation argument is essentially copied from its motion to dismiss. This Court, of course, already rejected that argument. It should do so again here, and deny Target's motion for summary judgment under the law-of-the-case doctrine.

**B.    Section 227.3's plain text requires employers to pay departing employees at their "final rate," including shift differentials.**

Even if it does choose to revisit the statutory-interpretation issue, the Court should conclude that it was right the first time around.

**1.** As with all statutory interpretation, federal courts interpreting a California statute must "begin with its text, as statutory language typically is the best and most reliable indicator of the Legislature's intended purpose." *Larkin v. Workers' Comp. Appeals Bd.*, 62 Cal. 4th 152, 157 (2015); *see Brunozzi v. Cable Commc'ns, Inc.*, 851 F.3d 990, 998 (9th Cir. 2017) (holding that courts "must follow the state's rules of statutory interpretation"). When "examin[ing] the statutory language," courts must "giv[e] it a plain and commonsense meaning." *Meza v. Portfolio Recovery Associates, LLC*, 6 Cal. 5th 844, 856 (2019).

California Labor Code section 227.3 provides, in relevant part, that whenever an employer provides for vacation and an employee is terminated without having taken his vested vacation, "all vested vacation shall be paid to him as wages *at his final rate* in accordance with such contract of employment or employer policy

respecting eligibility or time served." Cal. Lab. Code § 227.3 (emphasis added). The legal question at the heart of Target's motion is whether the statute's reference to "final rate" means merely the employee's base hourly rate, as Target contends, or her *actual* final rate of pay (i.e., including shift differentials), as Mills contends.

The plain text unambiguously supports the latter interpretation. The ordinary meaning of an employee's "final rate" is the rate that the employer actually paid a departing employee immediately prior to termination. That understanding is confirmed by dictionary definitions of the word "final"—which means "coming at the end; being the last in a series, process, or progress"—and the word "rate"—which means "an amount of payment or charge based on another amount." Merriam-Webster Online (last visited June 1, 2021). The "final rate" under section 227.3, in plain English, is the "amount of payment" that an employee received "at the end" of her service at the company—in Mills' case, her $13 base rate plus her $2 shift differential.

This straightforward interpretation of section 227.3's text is consistent with this District's precedents. *See* Dkt. 20 at 4–5. In *Wang v. Chinese Daily News*, for example, the court concluded that, "[p]ursuant to Cal. Labor Code § 227.3 and *Suastez*, [an employer's] 'buy back' of unused, but accrued, vacation days should have been computed by reference to the employee's *regular rate of pay*." 435 F. Supp. 2d 1042, 1049 (C.D. Cal. 2006), *aff'd*, 623 F.3d 743 (9th Cir. 2010), *cert. granted, judgment vacated on other grounds*, 565 U.S. 801 (2011). And an employer's "regular rate," the Court explained, includes "all remuneration for employment paid to, or on behalf of the employee, not simply their base or hourly rate." *Id.* at 1055 (quotations omitted).[2] Later, in *Sevilla v. Aaron's, Inc.*, the court

_____

[2] Target is thus simply wrong in asserting (at 9–10) that "it is not even clear what the [*Wang*] court meant by 'regular rate of pay.'" Although the district court defined the term later in its opinion when analyzing another claim, Target offers no reason to believe that the court was using the term in a different sense when discussing section 227.3

found *Wang*'s analysis "persuasive" in recognizing, for class-certification purposes, the plaintiff's theory that section 227.3 does not allow employers to pay out vested vacation at "the employee's final straight time rate of pay." 2019 WL 2879874, at *11 & n.11 (C.D. Cal. Mar. 25, 2019); *see also Gatdula v. CRST Van Expedited, Inc.*, 2011 WL 3652491, at *6 (C.D. Cal. June 3, 2011) (citing *Wang* and explaining that "vested vacation time is to be paid to an employee as wages at his or her final rate").

In sum, this Court should interpret section 227.3 to mean what it says—and what the Court already decided it means. Under the statute, employers must pay out departing employees' unused vacation at their "final rate." Because Target violated section 227.3's "clear and unambiguous" language, the Court's "inquiry" into the statute "ends" here. *See In re D.B.*, 58 Cal. 4th 941, 945 (2014); *see also, e.g., BedRoc Ltd., LLC v. United* States, 541 U.S. 176, 183 (2004) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous.").

**2.** Despite the California Supreme Court's command that statutory interpretation start (and end) with the text, however, Target never offers any contrary textual interpretation of the phrase "final rate." Indeed, it barely discusses this statutory language at all in its motion. Instead, the company pushes a novel construction that is entirely unmoored from the text.

In Target's view, the statute should be interpreted to require the employer to pay a departing employee at "the same rate [that the vacation] would have been paid if the vacation was taken" at some (unspecified, earlier) point of time during employment. Dkt. 49-1 at 7. But Target doesn't explain how that interpretation can be squared with the statute's mandate that vacation be paid out at the employee's *final* rate. Its interpretation would, in fact, write the word "final" out of the statute altogether. That approach to statutory interpretation flouts binding California precedent. As the California Supreme Court has made clear, courts "must accord[ ] significance, if possible, to every word, phrase and sentence in pursuance of the

legislative purpose." *People v. Valencia*, 3 Cal. 5th 347, 357 (2017). Accordingly, "[a] construction that renders some statutory language surplusage or redundant"— like Target's here—"is to be avoided." *Bernard v. Foley*, 39 Cal. 4th 794, 810–11, 139 P.3d 1196, 1206 (2006); *see, e.g.*, *Mendoza v. Nordstrom, Inc.*, 2 Cal. 5th 1074, 1087 (2017) ("[T]he Legislature does not engage in idle acts, and no part of its enactments should be rendered surplusage if a construction is available that avoids doing so.").

Target has no answer to the critique that its construction deletes the word "final" from the law. That alone is fatal to its summary-judgment position. The company instead purports to root its interpretation elsewhere in the statute—namely, that the "vested vacation shall be paid to [the employee] as wages at his final rate *in accordance with such contract of employment or employer policy* respecting eligibility or time served." Cal. Labor Code, § 227.3 (emphasis added). The italicized language, in Target's view, allows an employer to pay the departing employee at *any* rate so long as that rate is provided in the employer's policy or contract. *See* Dkt. 49-1 at 1, 7–9. And here, Target contends, its unwritten policy is to pay out vacation to employees—whether continuing or departing—at only their base hourly rate.

Putting aside the fact that Target's interpretation conflicts with the statute's plain requirement that vacation time be paid at an employee's "final" rate (as discussed above), its position must be rejected for an additional reason. Although the statute refers to an employer's contract or policy, that reference does not modify the phrase "final rate." As the California Supreme Court has explained, under the "last antecedent rule," courts "understand a qualifying phrase to apply only to the word or phrase that immediately precedes it and not to other words or phrases that appear earlier in a list or series." *Wilde v. City of Dunsmuir*, 9 Cal. 5th 1105, 1127 (2020). Applying this rule, section 227.3's final clause—"respecting eligibility or time served"—must be interpreted to modify the phrase immediately before it—

---

"such contract of employment or employer policy." And it modifies *only* that phrase; the last clause cannot be understood to modify "final rate."

Under a proper reading of section 227.3, then, an employer's policy or contract determines only whether an employee is *entitled* to accrue vacation ("eligibility") and the *amount* of vacation that she can accrue ("time served"). This understanding accords with California precedent, which holds that section 227.3's "language means that the employer's policy determines *the amount of vacation time earned*, typically based on the employee's length of employment and position held." *Bell,* 209 Cal. App. 4th at 75 (citing *Suastez*, 31 Cal. 3d at 782–83) (emphasis added). By contrast, the employer's policy or contract has no relation to the wage rate that an employer must pay upon termination—the statute requires that unused vacation time be paid out at the employee's "final rate," regardless of any such policy or contrast.

Here, Mills' final rate of pay included shift differentials. Thus, Target was required to include those shift differentials when it paid out her vacation time. Because it did not, it violated section 227.3. The Court should thus deny Target's motion for summary judgment.

### C.   Target's atextual interpretation of section 227.3 finds no support in either precedent or policy.

As discussed, Target does not provide any textualist account of section 227.3. Instead, it purports to ground its construction in both precedent and policy. *See* Dkt. 49-1 at 7–9. But neither comes close to justifying Target's atextual interpretation. For this reason, too, Target's motion for summary judgment should be denied.

**1.** Target's construction of section 227.3 relies almost entirely on a single outlier decision from the Northern District: *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014 (N.D. Cal. 2010). *See* Dkt. 49-1 at 7–8, 10–11. This Court already "reject[ed]" Target's reliance on that case at the pleading stage, instead choosing to apply the plain text of the statute and the reasoning of Central District decisions like

*Wang* and *Sevilla*. Dkt. 20 at 7. Thus, the Court need not revisit *Drumm* at all on summary judgment. Nevertheless, it is worth noting that, contrary to Target's assertions, *Drumm* hardly supports the company's atextual interpretation.

At various points in its motion, Target gives the impression that *Drumm* analyzed the language of section 227.3 in depth. *See* Dkt. 49-1 at 2, 10–11. But it did nothing of the sort. What Target fails to mention is that  section 227.3 was not at issue at all in *Drumm*. Instead, the court in *Drumm* considered the plaintiff's Rule 59(e) motion to correct "the jury's calculation of *waiting time penalties*"—like here, a claim entirely separate from the plaintiff's section 227.3 claim. 695 F. Supp. 2d at 1018 (emphasis added). Only in comparing how the calculation of waiting-time penalties differ from the calculation of unaccrued vacation pay did the court discuss section 227.3's "final rate" requirement in passing. Specifically, the court said that the law requires an employer to "pay out vested vacation time at the rate at which the employee would have been paid during a vacation, had he taken one." *Id.*

But this isolated passage—on which Target so heavily relies—had no bearing on the case at hand and was not based on any analysis of the statute's text or any other form of statutory interpretation. *See id.* And that is not surprising: The plaintiff in *Drumm* did not challenge the jury's calculation of the wages he was due for unpaid vacation time. Indeed, the court's opinion suggests that the plaintiff *agreed* to this (incorrect) interpretation of the statute—the jury instruction on section 227.3 reflected this erroneous statutory understanding, and the plaintiff does not appear to have challenged it. *See id.* at 1019–20. "It is axiomatic that cases are not authority for issues not considered." *Khrapunov v. Prosyankin*, 931 F.3d 922, 933 (9th Cir. 2019). Accordingly, this Court should (once again) reject Target's attempted reliance on *Drumm*.

**2.** The only other authority that Target cites in support of its interpretation of section 227.3 is the California Division of Labor Standards and Enforcement (DLSE) 2003 opinion letter. *See* Dkt. 49-1 at 8. But this does not save Target either.

For starters, as this Court has explained, DLSE advice letters are not "controlling" on courts, who are obligated to "independently analyze the relevant statutory provision to determine its application." Dkt. 20 at 7 (quoting *Novoa v. GEO Grp., Inc.*, , 2018 WL 3343494, at *9 (C.D. Cal. June 21, 2018)). And that is not just this Court's opinion—the California Supreme Court itself has repeatedly held the same. *See, e.g.*, *Kilby v. CVS Pharmacy, Inc.*, 63 Cal. 4th 1, 13 (2016) (observing "that the DLSE's enforcement policies are not entitled to deference because they were not adopted in compliance with the Administrative Procedure Act"); *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 563 (2007) (recognizing that the DLSE's "interpretation" of a statute in an opinion letter "is entitled to no deference but … [the] court may adopt the DLSE's interpretation if we independently determine that it is correct").

In any case, the DLSE 2003 opinion letter does little to help Target. Initially, the letter admits that it "only offer[s] general information on the issue." Dkt. 19 at 9. Next, it concedes that the "final rate" under section 227.3 "may be more or less than the rate which was in effect at the time that the vacation was accrued"—precisely what Mills argues is the case here. *Id.* Target's theory, recall, is that the "final rate" is the same as the rate that would have been paid for the vacation if the vacation had been taken. Most importantly, the DLSE's opinion is premised on the assumption that the employer "change[d] [its] vacation policy"—presumably a written, official policy—"to provide that the vacation wage to be paid to an employee will be calculated on the hourly rate only, not including the shift differential." *Id.* But here, Target has acknowledged that it *never* told its employees, either in an employment contract or other policy document, that upon termination their accrued vacation time would be paid out at their base rate, instead of the "final rate" specified in section 227.3. (Brewer Depo 55:11-23 and 56:17-18.)

Thus, even if section 227.3 permitted an employer to modify the rate at which it pays unused vacation by contract or policy (and it does not), Target has not done

so here. And, as this Court recognized, no authorities, including *Drumm* or the DLSE opinion letter, explain "how the final rate of pay for vested vacation time should be calculated when," as here, "the employment policy is silent on that issue." *Dommers v. Davol, Inc.*, 2018 WL 6582831, at *2 (S.D. Cal. May 24, 2018); *see* Dkt. 20 at 6 n.7.

**3.** In the end, Target's argument in support of its interpretation largely boils down to a policy-based appeal. According to Target, interpreting the statute based on its plain text would produce a "bizarre result" by allowing terminated employees to receive "a higher vacation-pay vested rate" as compared to employees "who continue working for the employer." Dkt. 49-1 at 2, 11.

But neither Target nor this Court can rewrite a state statute based on its own view of the best or most rational policy outcome. As the California Supreme Court has made clear, "policy argument[s]" are "best directed to the Legislature, which can study the various policy and factual questions and decide what rules are best for society. Our role here is to interpret the statute[s] [as they are written], not to establish policy. The latter role is for the Legislature." *Los Angeles Cty. Metro. Trans. Auth. v. Alameda Produce Mkt., LLC*, 52 Cal. 4th 1100, 1112 (2011) (alteration in original). Here, California's legislature unambiguously mandated that employers pay departing employees' unused vacation at their "final rate" of pay.

In any event, Target's policy argument is meritless. The company seems to take it for granted that terminated employees should be treated less well than continuing employees. But, in enacting section 227.3, California's legislature could have reasonably believed that terminated employees are more likely to be denied pay for unused vacation following their termination. And this vacation pay "is not a gratuity or a gift, but is, in effect, additional wages for services performed." *Suastez*, 31 Cal. 3d at 779. Thus, to ensure that terminated employees—who are in a more vulnerable economic state and less able to bargain or negotiate with their former employer—actually receive these additional wages, the legislature required

employers to pay out unused vacation at the employee's "final rate." There is nothing irrational, let alone "absurd," about that policy decision. *See* Dkt. 49-1 at 11. And even if this Court disagrees, it does not have the authority to question the wisdom of the Legislature's choice and overlook the plain text of the statute.

Moreover, it is actually Target's interpretation that raises practice concerns and flouts common sense. Under Target's construction of section 227.3, an employer must pay out a departing employee's vacation time at the same rate that it would have paid had that employee taken vacation during his employment. But Target does not explain how employees (or courts, for that matter) could know what rate they would have been paid had they taken their vacation at some hypothetical point in the past. What if, for instance, the employee had accrued vacation over several years, during which she was paid at different rates? Employers and courts applying Target's interpretations would have to undertake a guessing game just to calculate the correct rate of pay for unused vacation time—an inadministrable and impractical regime that is hard to reconcile with the Legislature's purpose in enacting section 227.3. Under our interpretation, however, the calculation is simple—the employee's vacation time must be paid at "his final rate." Cal. Labor Code § 227.3.

Finally, Target's policy argument clashes with California's longstanding public policy favoring the protection of employees. For decades, the California Supreme Court has repeatedly explained that "California's wage and hour laws are remedial in nature and must be liberally construed in favor of affording workers protection." *Ward v. United Airlines, Inc.*, 9 Cal. 5th 732, 754 (2020); *see, e.g.*, *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 70 (2021); *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1026–27 (2012); *Prachasaisoradej v. Ralphs Grocery Co., Inc.*, 42 Cal.4th 217, 227 (2007). As part of that public policy, paid vacation is "jealously protected by statutes for the benefit of employees." *Boothby v. Atlas Mechanical, Inc.*, 6 Cal. App. 4th 1595, 1602 (1992). But Target seeks to diminish these statutory protections by reducing the amount of vacation pay to which

Mills and the putative class members are entitled, in direct conflict with the Labor Code's commands.

* * * * *

For the reasons above, the Court should reject Target's atextual interpretation of section 227.3 and instead conclude that the statute requires just what it says: Target was obligated to pay out Mills' unused vacation at her "final rate" of pay. Because the company admits that it failed to do so and thus violated the statute, Target's motion for summary judgment should be denied.

## II.   Summary judgment is inappropriate on Mills' claim for waiting-time penalties, because Target has not established any "good faith" defense.

Target argues that, regardless of how this Court interprets section 227.3, it should grant summary judgment against Mills on her waiting-time-penalty claim under California Labor Code section 203. This argument should be rejected as well.

Section 203 imposes penalties on employers who "willfully" fail to pay wages upon an employee's termination Cal. Labor Code § 203(a). Critically, "[t]he term 'willful' within the meaning of section 203, means the employer 'intentionally failed or refused to perform an act which was required to be done.' *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.*, 102 Cal. App. 4th 765, 781 (2002). In other words, "willfulness" for purposes of section 203 "simply denotes an employer's failure to perform a required act." *Heritage Residential Care, Inc. v. Div. of Lab. Standards Enf't*, 192 Cal. App. 4th 75, 84 (2011). "It does not mean that the employer's refusal to pay wages must necessarily be based on a deliberate evil purpose to defraud workers of wages which the employer knows to be due." *Road Sprinkler*, 102 Cal. App. 4th at 781; *see Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 54 (2013) ("To be at fault within the meaning of [section 203], the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due."). Put simply, "[i]n civil cases the word 'willful' . . . amounts to nothing more than this: That the person

knows what he is doing, intends to do what he is doing, and is a free agent." *Nishiki*, 25 Cal. App. 5th at 891.

There is no dispute that Target intentionally refused to pay out Mills' unused vacation at her "final rate," including shift differentials. Indeed, Target admits that its "consistent practice" has "always" been to pay terminated employees' vacation time at their "base hourly rate." Dkt. 49-1 at 3–4. Thus, Mills has established the prima facie willfulness requirement for waiting-time penalties.

In its motion, Target does not even try to contest that its failure to pay Mills' vacation at her "final rate" qualifies as "willful" within the meaning of section 203. Instead, it seeks refuge in the so-called "good faith" defense set out in California's regulations interpreting section 203. *See* Cal. Code Regs. tit. 8, § 13520(a) (defining "good faith dispute" as "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee"). In particular, Target argues that its "undisputed good-faith belief that it had paid [Mills] all of the vested vacation she was owed acquits Target of the charge of waiting-time penalties." Dkt. 49-1 at 12.

That is meritless, for at least three reasons. *First*, Target's "good-faith belief" is not "undisputed" at all. Mills has consistently argued that Target's interpretation of section 227.3 conflicts with the statute's plain text. Adopting practices directly contrary to unambiguous statutory language cannot, as a matter of law, qualify as "good faith." *Second,* "[t]he presence or absence of a good faith belief on [Target's] part is a factual question"—one that typically "must be resolved at trial." *Lopez v. United Parcel Serv., Inc.*, 2010 WL 728205, at *9 (N.D. Cal. Mar. 1, 2010); *see, e.g.*, *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1332 (2018) ("The issue of good faith is . . . an issue of fact reviewed for substantial evidence."); *Labriola v. Bank of Am., Nat. Ass'n*, 2012 WL 1657191, at *5 (N.D. Cal. May 10, 2012) (noting that section 203's good-faith defense "is a factual issue"). The Court should thus, at the very least, defer its consideration of Target's defense until the

record of the company's good-faith belief has been developed further.  But *third*, and most importantly, Target "cannot carry its burden on summary judgment simply by asserting in a conclusory fashion in an argumentative pleading that it acted under a good faith belief plaintiff was exempt." *See Lopez*, 2010 WL 728205, at \*9. Instead, it must provide some *evidence* that supports its claimed good-faith belief. *See id.* But Target offers nothing whatsoever with its motion.

This evidentiary failure alone is fatal to the company's defense. As the regulation itself makes clear, "[d]efenses presented which, under all the circumstances, are unsupported by any evidence . . . preclude a finding of a 'good faith dispute.'" 8 Cal. Code Regs. § 13520(a); *see Diaz v. Grill Concepts Servs., Inc.*, 23 Cal. App. 5th 859, 873–74 (2018). All that Target points to is its subjective belief that, "in the absence of authoritative precedent," its interpretation was correct. Dkt. 49-1 at 11–12. "But, a mere subjective good faith belief that wages were not due is insufficient." *Maldonado*, 22 Cal. App. 5th at 1333. Instead, the employer must offer an "objectively reasonable factual basis for [the] defense" based on "evidence." *Id.*

Yet here, the evidence actually shows the opposite: Target "made no inquiry whatsoever" to determine whether its understanding of section 227.3 was correct. *See id.* In fact, Target's Director of Employer Relations, Michael Brewer, testified that he had no knowledge of any internal memoranda or other internal documents or deliberations concerning whether or not to include shift differentials in vacation pay. (Brewer Depo. 68:18-21.) Although he was responsible for Target's compliance with California's wage-and-hour laws (Brewer Depo. 22:5-16), he was unaware of even the existence of the DLSE opinion letters that Target now claims served as the basis for its good-faith belief—he had not even reviewed the opinion letters before his deposition. (Brewer Depo. 70:15-18, 70:19-25 and 71:1-11.) And Brewer testified that there was no indication that Target actually relied on the opinion letters when deciding its unwritten "vacation policy." (Brewer Depo. 74:17-21.) Given this record, Target's mid-litigation assertion that it subjectively believed that it was

complying with the law "[can]not cure . . . the lack of evidence" showing that it actually had a good-faith belief that its practice was lawful. *Diaz*, 23 Cal. App. 5th at 874.

Ultimately, Target's argument for good faith is simply that it did not know what it was required to do under section 227.3. But it is well-settled in California that "ignorance of a law is not a defense." *Hale v. Morgan*, 22 Cal. 3d 388, 396 (1978). Accordingly, this Court should deny Target's motion for summary judgment on Mills' claim for waiting-time penalties.

## CONCLUSION

The Court should deny Target's motion for summary judgment in its entirety.

Dated:  June 7, 2021                                    LAUBY, MANKIN & LAUBY LLP


                                                       BY:   */s/ Peter J. Carlson*
                                                              Brian J. Mankin, Esq.
                                                              Peter J. Carlson, Esq.
                                                              LAUBY MANKIN & LAUBY, LLP
                                                              4590 Allstate Drive
                                                              Riverside, CA  92501
                                                              Tel:   (951) 320-1444
                                                              Fax:  (951) 320-1445
                                                              *brian@lmlfirm.com*
                                                              *peter@lmlfirm.com*

                                                              Deepak Gupta (*Pro hac vice* pending)
                                                              GUPTA WESSLER PLLC
                                                              1900 L Street NW, Suite 312
                                                              Washington, DC 20036
                                                              Tel:   (202) 888-1741
                                                              *deepak@guptawessler.com*

                                                              Neil K. Sawhney (SBN 300130)
                                                              GUPTA WESSLER PLLC
                                                              100 Pine Street, Suite 1250
                                                              San Francisco, CA 94111
                                                              Tel:   (415) 573-0336
                                                              *neil@guptawessler.com*

                                                              Attorneys for Plaintiff