Brian J. Mankin, Esq. [SBN 216228]
brian@lmlfirm.com
Peter J. Carlson, Esq. [SBN 295611]
peter@lmlfirm.com
LAUBY, MANKIN & LAUBY LLP
4590 Allstate Drive
Riverside, CA 92501
Tel:   (951) 320-1444
Fax:   (951) 320-1445

Attorneys for Plaintiff, on a representative basis and on behalf of all others similarly situated

[*Additional counsel for Plaintiff listed on the next page*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINNAMON MILLS, individually, on a representative basis, and on behalf of all others similarly situated;<br><br>Plaintiff,<br>vs.<br>TARGET CORPORATION, a Minnesota Corporation; and DOES 1 through 20, inclusive;<br><br>Defendants. | Case No.: 5:20-cv-01460-JGB-KK<br>*[Assigned to Hon. Judge Jesus G. Bernal]*<br><br>**PLAINTIFF CINNAMON MILLS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Hearing<br>Date:        June 28, 2021<br>Time:        9:00 a.m.<br>Place:        Courtroom 1<br><br>Complaint Filed:   June 10, 2020<br>Removal Date:     July 22, 2020<br>Trial Date:        December 14, 2021 |

Deepak Gupta [*Pro Hac Vice*]
GUPTA WESSLER PLLC
1900 L Street NW, Suite 312
Washington, DC 20036
(202) 888-1741
*deepak@guptawessler.com*

Neil K. Sawhney [SBN 300130]
GUPTA WESSLER PLLC
100 Pine Street, Suite 1250
San Francisco, CA 94111
(415) 573-0336
*neil@guptawessler.com*

Attorneys for Plaintiff, on a representative basis and on behalf of all others
similarly situated

# INTRODUCTION

Class certification is warranted when the class members' claims "depend upon a common contention" that "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This is precisely such a case. The answer to a single, common question of law—does California Labor Code section 227.3 require employers to pay departing employees' vested vacation at their "final rate" of pay?—will drive the resolution of all of Mills' class claims. Target, for its part, agrees. The company's entire defense to liability is also a "common contention" suitable for classwide resolution: It believes that its practice of paying employees only their base hourly rate, not their "final rate," complies with the statute. Presumably for this reason, Target does not question in its opposition that Rule 23's requirements are met here.

Instead, Target presents two alternative bases for denying certification, both of which are meritless. *First*, Target argues for the first time that Mills did not suffer Article III injury. This argument is not just wrong—Mills alleges that she was denied wages that she was owed, a heartland economic injury—but it also flows from a fundamental misunderstanding of how courts separately analyze Article III standing from the merits. *Second*, Target contends that any class here should be limited to employees who were paid a Covid-19 shift differential, as opposed to an "ordinary" shift differential. But Target offers no reason why this is a legally significant distinction for purposes of class certification: All putative class members were paid a shift differential in their final pay period, yet none of them had that differential included in their vacation payout. And Target's complaints about the complexity and difficult of calculating the "final rate" for the class members fall flat—indeed, the company *already* includes shift differentials (of all forms) when calculating overtime and sick pay, because it is *required* to do so under California law. Target should, therefore, have no trouble doing so for vested vacation as well. The Court should grant the motion for class certification.

**ARGUMENT**

**I.    Target does not contest that Mills has satisfied all of Rule 23's requirements.**

Although Target opposes class certification, it does not argue that Mills fails to meet the requirements set out in Rule 23(a) and (b)(3). In fact, the company barely discusses Rule 23 in its brief. And Target does not engage with—let alone rebut—any of Mills' arguments for why certification is warranted here. *See* Dkt. 48 at 7–13.

Target's omission is not surprising. The company's own arguments confirm that this case is perfectly suited for class treatment. As Target acknowledges, the central question on which its liability turns is a common one: Whether "Target's consistent policy and practice of paying vacation at the current base hourly rate—whether when it is taken or when it is cashed out upon termination—complies with California Labor Code section 227.3." Dkt. 54 at 1; *see also id.* at 5 (arguing that Target's practice is "entirely proper" under section 227.3). Indeed, the premise of the company's summary-judgment motion is that its interpretation of section 227.3 entirely relieves Target from liability. *See* Dkt. 49-1 at 5–11. Thus, this is not just a case in which common questions *predominate* over individualized questions—the common statutory-interpretation question here will *resolve* all of the class claims "in one fell swoop." *In re Walgreen Co. Wage & Hour Litig.*, 2014 WL 12853545, at *3 (C.D. Cal. June 24, 2014) (citing *Dukes*, 564 U.S. at 350).

To repeat: Target does not meaningfully contest that Rule 23's requirements are satisfied here. And, as the Supreme Court and Ninth Circuit have made clear, "a plaintiff whose suit meets the specified criteria" set out in that rule is "entitl[ed]" to "pursue h[er] claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *see Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1182 (9th Cir. 2013) ("Rule 23 provides a categorical rule: if the requirements are met, then a plaintiff is entitled to maintain his suit as a class

action."). This Court should, therefore, certify the proposed class under Rule 23.

## II.   Mills indisputably has Article III standing.

Target did not challenge Mills' standing to bring her claims in either its motion to dismiss or motion for summary judgment. Yet, for the first time in its opposition to class certification, Target now argues that Mills "did not suffer a cognizable injury" at all. *See* Dkt. 54 at 3–5.

This attempted attack on Mills' Article III standing is baseless. Indeed, there can be no doubt that Mills has suffered a cognizable injury. Mills claims that Target was statutorily obligated to pay out her unused vacation time at her "final rate" of $15 per hour—her $13 base hourly rate plus her $2 hourly shift differential. But Target concedes that it calculated Mills' vacation based only on her base hourly rate. Thus, Target deprived Mills of substantial wages ($2 per hour for each hour of vested vacation) that she was owed. And "[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017); *see San Diego Cty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing."). That should be the end of the standing inquiry here.

Nevertheless, Target argues that Mills cannot have suffered an Article III injury because its practice of paying out vacation time at employees' base hourly rate is "entirely proper" under Labor Code section 227.3. Dkt. 54 at 5. But Target "seems to have improperly conflated [Mills'] standing with whether she would prevail on the merits." *Kirola v. City & Cty. of San Francisco*, 860 F.3d 1164, 1175 (9th Cir. 2017). That it cannot do. As the Ninth Circuit has explained, "Article III is not superfluous. Its standards exist apart from the merits, and are well established." *Id.*

Target's "standing" argument is nothing more than a disguised version of the statutory-interpretation argument it makes on summary judgment—*i.e.*, that section 227.3 does not require the company to pay departing employees' vacation at their

"final rate." And it is true that if Target does "not owe [Mills] any duty" under the statute, her "claims fail on the merits." *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1109 (9th Cir. 2014). "But Article III 'standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). Rather, "[i]n determining whether plaintiffs have standing, [courts] must *assume* that on the merits they would be *successful* in their claims." *Muir v. Navy Federal Credit Union*, 529 F.3d 1100, 1106 (D.C. Cir. 2008) (emphasis added); *see, e.g.*, *Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 968 (8th Cir. 2016); *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 734 (1st Cir. 2016); *Carver v. City of New York*, 621 F.3d 221, 225–26 (2d Cir. 2010).

In other words, the "standing inquiry in this case is: assuming the plaintiffs could win on the merits, should their claims nonetheless be dismissed for lack of standing because the injury they allegedly suffered is not cognizable in federal court?" *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 788 (N.D. Cal. 2019). The answer to that inquiry here is plainly no. If Mills' interpretation of section 227.3 is correct, then she—and all the putative class members—were denied wages that they were owed under California law. That monetary deprivation is the paradigmatic example of Article III injury-in-fact. Accordingly, the Court should reject Target's erroneous standing argument.

## III.   The Court should not modify the class definition to include only employees who were paid a Covid-19 shift differential.

As noted, Target does not meaningfully contest that Rule 23 is satisfied here, and that class certification is therefore warranted. Instead, its primary argument is that this Court should certify a narrower class than what Mills proposed—a class that includes only employees who were paid the Covid-19 shift differential. *See* Dkt. 49-1 at 6–12. But, as explained below, this argument should also be rejected.

/ / /

/ / /

**A. Target can easily determine the final rate of pay for all class members—in fact, it already does.**

The class definition that Mills has proposed is straightforward: It includes all non-exempt employees who, during the class period, (a) received shift differential pay during the last workweek worked, (b) had vested vacation owed upon separation of employment, and (c) were paid for that vested vacation at a rate that did not include the shift differential. *See* Dkt. 48 at 7. In other words, all employees who had their vested vacation time paid out at their base hourly rate instead of their "final rate" of pay (which includes their shift differential pay) would be class members under the proposed definition.

Yet, to avoid supposed "complexities," Target argues that this class must be narrowed to only those employees who were terminated between March 22, 2020, and July 4, 2020, when the company's Covid-19 shift differential was in effect. *See* Dkt. 49-1 at 8–10. Employees who were paid "ordinary" shift differentials should not be included, Target contends, because "there is no consistent, manageable, classwide way to determine the[ir] 'final rate' of vacation pay." *Id.* at 9.

This makes no sense. Under Mills' interpretation of the statute, the "final rate" for purposes of section 227.3 can easily be determined for all class members: It is just the employee's regular rate of pay in his or her final workweek. *See* Dkt. 55 at 8–9; *Wang v. Chinese Daily News*, 435 F. Supp. 2d 1042, 1049 (C.D. Cal. 2006); *Sevilla v. Aaron's, Inc.*, 2019 WL 2879874, at *11 & n.11 (C.D. Cal. Mar. 25, 2019). Contrary to Target's claims, nothing about that determination turns on the particular nature of the shift differential that the employee received. Nor is there any question about whether a class member "who earned ordinary shift differentials in their last week worked even suffered an injury." Dkt. 49-1 at 9. Definitionally, *every* class member will have suffered an injury—Target paid their vested vacation at their base hourly rate instead of their higher, final rate of pay including shift differentials.

/ / /

To the extent that Target is claiming that it is *practically* difficult to calculate the "final rate" for departing employees who worked variable shift-differential schedules—as compared to the fixed Covid-19 shift differential—it is mistaken. Indeed, the company's brief omits two critical facts: Target *already* calculates these employees' final rate of pay, and such calculations are *required* by state law.

Under California law, an employer must pay an employee at her "regular rate of pay" for various reasons—including, for example, overtime pay and sick pay. *See* Cal. Labor Code § 510(a) (overtime paid at "the rate of no less than one and one-half times the regular rate of pay for an employee"); *id.*, § 246(l)(1) ("Paid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek."). And, as the California Supreme Court has made clear, "an employee's 'regular rate of pay' . . . is *not* the same as the employee's straight time rate (i.e., his or her normal hourly wage rate)." *Alvarado v. Dart Container Corp. of Cal.*, 4 Cal. 5th 542, 554 (2018) (emphasis added). Rather, "[r]egular rate of pay, which can change from pay period to pay period, includes adjustments to the straight time rate, reflecting, among other things, *shift differentials* and the per-hour value of any nonhourly compensation the employee has earned." *Id.* (emphasis added).

In other words, Target has to calculate the rate of pay including shift differentials for all of its employees—regardless of section 227.3. And the company does in fact do just that. Michael Brewer, Target's Director of Employee Relations, testified in his deposition that "California sick pay requires the payment be made using the regular rate of pay. So, therefore . . . the shift differential is included in the regular rate of pay calculation, and your sick pay is paid at that rate."[1] Indeed, Target did so for Mills herself: As her pay statement shows, the company calculated her

---

[1] Deposition of Defendant's 30(b)(6) Witness, Michael Brewer, attached as Exhibit F to the Supp. Decl. of Peter J. Carlson filed in Support of the Reply, pp. 68:2-6.

sick pay at $15/hour (i.e., her base hourly rate plus her shift differential).[2] And it presumably did the same for all of its employees—including all of the proposed class, whether or not they received a Covid-19 shift differential or an "ordinary" shift differential.

In light of the above, there is nothing complex or unmanageable about determining the "final rate" for "ordinary shift differential" class members—Mills is simply asking Target to do what it has already done many times before. As the company's opposition demonstrates, Target's own records list the total amount of vested vacation for each class member. *See* Dkt. 49-1 at 6–8; Dkt. 54-2 at 2–4. Target knows each class member's base hourly rate, which it (erroneously) used to pay out vested vacation. And, as is now clear, Target has already calculated (or can easily calculate) the "final rate" of pay for each class member. Those three figures, derived from Target's own records, are all that is needed to determine what each class member is owed. There is, therefore, no need for a trial plan or detailed proposal to determine Target's liability or damages. *See* Dkt. 49-1 at 11–12. After this Court has answered the central (and common) statutory-interpretation question, all that will be left is "simple arithmetic." *Castillo v. Johnson*, --- Fed. App'x ---, 2021 WL 1592350, at *1 (9th Cir. Apr. 23, 2021). That is "not . . . a reason to deny class certification." *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 595 (S.D. Cal. 2010) (citing *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)).

**B. Nothing in Rule 23 requires the Court to narrow the class.**

Apart from practical complexity, Target tries to ground its legal argument for narrowing the class definition in Rule 23's predominance and typicality requirements. *See* Dkt. 49-1 at 9–11. But both attempts fail.

As to predominance, the Ninth Circuit has "repeatedly confirmed . . . that the need for individualized findings as to the amount of damages does not defeat class

---

[2] See TARGET_000146, attached as Exhibit G to Supp. Carlson Decl.

certification." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016); *see, e.g., Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015); *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010). That is because "[t]he Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). "That some individualized issues might need to be addressed does not in and of itself defeat predominance." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 560 (9th Cir. 2019) (en banc). Indeed, "even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *Id.* at 557 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)).

This precedent is controlling here. As we have previously explained, Target's classwide liability in this case turns almost entirely on a single question of law applied to undisputed facts: Does Target's common practice of paying departing employees' vested vacation at their base hourly rate violate section 227.3? *See* Dkt. 48 at 8–9, 11–13. That common question certainly predominates over any potential individualized damages questions—which, as discussed, involve at most ministerial calculations based on Target's own payroll records. *See, e.g., Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007), *aff'd sub nom. Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009) (finding predominance satisfied where "only individual issues are ministerial, e.g. identifying class members and calculating actual damages"); *Mendis v. Schneider Nat'l Carriers, Inc.*, 2017 WL 497600, at *7 (W.D. Wash. Feb. 7, 2017) ("[T]he fact that damages vary for each class member, as they will in virtually any wage and hour class action, does not preclude certification.").

Target's typicality argument is similarly meritless. The company seems to think that because Mills received only a Covid-19 shift differential, she cannot represent those class members who received "ordinary" shift differentials. Dkt. 49-1 at 10—11. But it does not explain why that distinction matters. *All* of the putative class members were shortchanged wages that they were owed—Target paid out their vested vacation only at their base hourly rate instead of their "final rate" of pay including shift differentials. Mills' experience is, therefore, entirely typical of the rest of the class members' experiences. The purpose of Rule 23's typicality requirement is simply "to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Target identifies no difference between the Covid-19 and "ordinary" shift differentials that even suggests that Mills' interests in the case will diverge from those of other class members. And it cannot: Every member of the class suffered "similar" injuries to those suffered by Mills—the denial of wages—from "the same, injurious course of conduct"—Target's practice of paying vested vacation at employees' base hourly rate, in violation of section 227.3. Accordingly, Mills satisfies Rule 23's typicality requirement.

## CONCLUSION

For the foregoing reasons, and those set out in her previous motion, Mills respectfully requests that the Court grant her motion for class certification.

Dated:  June 14, 2021                      LAUBY, MANKIN & LAUBY LLP


                                            BY:   */s/ Peter J. Carlson*
                                                  Brian J. Mankin, Esq.
                                                  Peter J. Carlson, Esq.
                                                  LAUBY, MANKIN & LAUBY LLP
                                                  4590 Allstate Drive
                                                  Riverside, CA  92501
                                                  T: (951) 320-1444
                                                  F: (951) 320-1445

1

2          Deepak Gupta (*Pro Hac Vice*)
           GUPTA WESSLER PLLC
3          1900 L Street NW, Suite 312
4          Washington, DC 20036
           T: (202) 888-1741
5          deepak@guptawessler.com

6
           Neil K. Sawhney
7          GUPTA WESSLER PLLC
8          100 Pine Street, Suite 1250
           San Francisco, CA 94111
9          T: (415) 573-0336
10         neil@guptawessler.com

11
           Attorneys for Plaintiff
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28