JEFFREY D. WOHL (Cal. State Bar No. 096838)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone:   (415) 856-7000
Facsimile:   (415) 856-7100
jeffwohl@paulhastings.com

LINDSEY C. JACKSON (Cal. State Bar No. 313396)
PAUL HASTINGS LLP
515 S. Flower Street, 25th Floor
Los Angeles, California 90071
Telephone:   (213) 683-6000
Facsimile:   (213) 627-0705
lindseyjackson@paulhastings.com

Attorneys for Defendant
Target Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINNAMON MILLS, individually, on a representative basis, and on behalf of all others similarly situated;<br><br>           Plaintiff,<br><br>     vs.<br><br>TARGET CORPORATION, a Minnesota corporation; and DOES 1 through 20, inclusive,<br><br>           Defendants. | No. 5:20-cv-01460 JGB (KKx)<br><br>**REPLY IN SUPPORT OF DEFENDANT TARGET CORPORATION'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:           June 28, 2021<br>Time:          9:00 a.m.<br>Courtroom:  1 (3470 Twelfth St., Riverside)<br>Judge:         Hon. Jesus G. Bernal<br><br>Action filed:      June 10, 2020 (state court)<br>Action removed: July 22, 2020<br>Trial date:         December 14, 2021 |

# TABLE OF CONTENTS

*Page*

Table of Authorities ................................................................................................. ii

I. INTRODUCTION/SUMMARY OF ARGUMENT ................................................. 1

II. PLAINTIFF'S INTERPRETATION OF LABOR CODE § 227.3 IGNORES THE RELEVANT STATUTORY LANGUAGE, FAILS TO REFUTE THE DLSE GUIDANCE AND THE HOLDING IN *DRUMM V. MORNINGSTAR*, AND DOES NOT SHOW WHY THE CALIFORNIA LEGISLATURE WOULD HAVE MANDATED THE BIZARRE OUTCOME HER ARGUMENT WOULD PRODUCE IF ADOPTED .................. 3

    A. Plaintiff Misreads Section 227.3 by Ignoring the Relevant Statutory Language. ................................................................................ 3

    B. The DLSE Guidance Is on Point and Should Be Followed. ......... 5

    C. *Drumm v. Morningstar, Inc.* Is Persuasive, While *Wang v. Chinese Daily News* Is Not on Point and Plaintiff Tries But Fails to Stretch Its Holding to Fit Here. .................................................................... 7

    D. Plaintiff's Effort to Rationalize a Bizarre Scenario—Where the Legislature Requires Employers to Pay Departing Employees More Than Continuing Employees When It Comes to Vacation Pay—Has No Support in the Law or Common Sense. .................................. 8

    E. The Court's Prior Decision on the Motion to Dismiss Is Not Law of the Case Because It Has Not Been Upheld on Appeal and Target's Motion Presents Evidence That Could Not Have Been Considered on the Motion to Dismiss. ....................................................................... 9

III. TARGET HAS MET ITS BURDEN OF SHOWING WHY, AS A MATTER OF LAW, WAITING-TIME PENALTIES MAY NOT BE AWARDED, AND PLAINTIFF HAS FAILED TO RAISE A TRIABLE ISSUE OF FACT ABOUT TARGET'S GOOD-FAITH BELIEF IT WAS FOLLOWING THE LAW ............................................................................... 11

IV. CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Amaral v. Cintas Corp. No. 2*,
  163 Cal. App. 4th 1157 (2008) .................................................................................. 12

*Barnhill v. Robert Saunders & Co.*,
  125 Cal. App. 3d 1 (1981) ................................................................................... 11, 12

*Drumm v. Morningstar, Inc.*,
  695 F. Supp. 2d 1014 (N.D. Cal. 2010) ................................................................. *passim*

*Harden v. Soboro*,
  No. 2:14-cv-00560-JAD-NJK, 2016 WL 259689
  (D. Nev. Jan. 21, 2016), *aff'd* 690 F. App'x 990 (9th Cir. 2017) ............................... 10

*Leslie Salt Co. v. United States*,
  55 F.3d 1388 (9th Cir. 1995) ................................................................................ 9, 10

*Owen v. Macy's Inc.*,
  175 Cal. App. 4th 462 (2009) .................................................................................... 4

*Perez v. Performance Food Grp.*,
  No. LA CV17-00357 JAK (SKx), 2017 U.S. Dist. LEXIS 232642
  (C.D. Cal. Dec. 15, 2017) .......................................................................................... 4

*Rhea v. General Atomics*,
  227 Cal. App. 4th 1560 (2014) .................................................................................. 9

*Suastez v. Plastic Dress-Up Co.*,
  31 Cal. 3d 774 (1982) ............................................................................................ 4, 7

*Turner v. County of Los Angeles*,
  No. 2:13-cv-04149-CAS-VBK, 2014 WL 7205036
  (C.D. Cal. Dec. 16, 2014) ........................................................................................ 10

*Wang v. Chinese Daily News*,
  435 F. Supp. 2d 1042 (C.D. Cal. 2006) ................................................................. *passim*

*Wyler Summit Pshp. v. Turner Broadcasting Sys.*, 235 F.3d 1184 (9th Cir.
  2000) ........................................................................................................................ 9

**Statutes, Regulations, and Rules**

8 Cal. Code Regs. § 13520 ............................................................................................ 11, 12

Cal. Lab. Code
  § 203 ......................................................................................................................... 8
  § 221-223 .................................................................................................................. 9
  § 227.3 ............................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 11

# TABLE OF AUTHORITIES
(*cont'd*)

*Page*

Healthy Workplaces, Healthy Families Act,
  Cal. Lab. Code § 246(*l*)(1), (2) ................................................................................ 4

**Secondary Authorities**

  DLSE November 17, 1986, Opinion Letter ................................................................ 5
  DLSE January 28, 2003, Opinion Letter ..................................................................... 5

## I. INTRODUCTION/SUMMARY OF ARGUMENT

Plaintiff's interpretation of California Labor Code section 227.3 is contrary to the statutory language, the administrative guidance, and the only court opinion that actually analyzes the issue. It also belies common sense.

According to plaintiff, section 227.3's reference to the "final rate" at which vested vacation must be paid means the final rate of the employee's wages, not the employee's final rate of vacation pay. But the statute does not say that, and the full sentence where "final rate" appears makes clear that the term means the final rate of *vacation pay*, not the final rate of wages. Specifically, section 227.3 says in pertinent part, "whenever ... an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate *in accordance with such contract of employment or employer policy respecting eligibility or time served*." Cal. Lab. Code § 227.3 (emphasis supplied). As plaintiff acknowledges, vacation is a matter of contract, not a statutory right, and the employer is free to set vacation pay at whatever rate it chooses. Section 227.3 simply requires that when the employee terminates, the employee gets his vested vacation paid at the same rate that would apply if he instead took the vacation (his final rate of vacation pay). That is what the DLSE says, what the court in *Drumm v. Morningstar, Inc.* held, and what makes sense.

The California Legislature knows how to tie a time-off benefit to a wage rate—it did so under the Healthy Workplaces, Healthy Families Act, which requires that sick pay required under the statute be calculated based on the employee's regular rate of pay or an average of his earnings. No such language appears in section 227.3. And nowhere in plaintiff's opposition does she rationalize why the Legislature would mandate the bizarre result that a terminating employee be paid more in vested vacation than what he would be paid if he continued to work and took the vacation.

Plaintiff's other arguments against summary judgment are equally wrong. As Target explained in its motion, *Wang v. Chinese Daily News* (which is not binding precedent in any event) does not address the proper interpretation of section 227.3. Instead, it deals

with a different situation, where the employer tried to cash out vacation balances of continuing employees with a lump-sum payment instead of the applicable vacation-pay rate set by the employer. The payment of vested vacation under section 227.3 was not at issue in *Wang*, and the court's reference to "regular rate of pay" is best understood to mean what the employees were being paid when they took their vacation, and nothing more. Furthermore, the Court's prior ruling on Target's motion to dismiss is not the "law of the case," where the ruling has not been upheld on appeal and it addressed only Target's defense that plaintiff needed to plead a contract entitling her to be paid her vested vacation at more than her hourly base rate. On this motion, the Court has been supplied with undisputed evidence not mentioned in plaintiff's complaint that Target's consistent policy and practice has been to pay vacation, whether when it is taken or when it is cashed out upon termination, at the team member's then-current hourly base rate of pay. Based on that evidence, the Court now may adjudicate that, as a matter of law, plaintiff was paid her vested vacation at the correct rate.

As for her claim for waiting-time penalties, plaintiff simply disregards the DLSE's regulations and the case law, which are clear that when the law is unsettled, the employer's failure to pay wages it believes are not owed does not render the employer liable for waiting-time penalties, even if a court later finds the employer erred in its judgment. Here, even if the Court disagrees with Target's construction of section 227.3 (which Target respectfully submits it should not), there is no dispute that (i) there is no controlling authority that Target is wrong; (ii) by contrast, there is ample authority that Target is right; (iii) Target's intention always was to pay all wages owed; and (iv) Target followed its consistent policy and practice in not including plaintiff's COVID-19 shift differential when it paid out her vested vacation upon termination. That showing more than satisfies Target's burden on summary judgment to show why waiting-time penalties may not be awarded. Plaintiff fails to raise a triable issue of fact that precludes summary judgment on the issue.

Target's motion for summary judgment remains well-founded in all respects and should be granted.

## II. PLAINTIFF'S INTERPRETATION OF LABOR CODE § 227.3 IGNORES THE RELEVANT STATUTORY LANGUAGE, FAILS TO REFUTE THE DLSE GUIDANCE AND THE HOLDING IN *DRUMM V. MORNINGSTAR*, AND DOES NOT SHOW WHY THE CALIFORNIA LEGISLATURE WOULD HAVE MANDATED THE BIZARRE OUTCOME HER ARGUMENT WOULD PRODUCE IF ADOPTED

### A. Plaintiff Misreads Section 227.3 by Ignoring the Relevant Statutory Language.

Section 227.3's relevant language states, "whenever ... an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate *in accordance with such contract of employment or employer policy respecting eligibility or time served*." Cal. Lab. Code § 227.3 (emphasis supplied). Section 227.3 requires that vested vacation be paid out at the final rate of vacation pay under the contract or policy providing for vacation, regardless of the rate that was in effect when it was accrued. As Target explained in its opening memorandum (ECF 49-1 at 12-13), if an employer's policy is to pay vacation at the employee's hourly rate, an employee who accrued hours of vacation when he earned $15 an hour in 2019 and carried over some of those hours to 2020 when he earned $16 an hour, his vested vacation would be paid out at the then-current vacation rate of $16 an hour. The vested vacation is "at the rate at which the employee would have been paid during a vacation, had he taken one." *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1019 (N.D. Cal. 2010).

Plaintiff's analysis of the statutory language does not support her own interpretation. Plaintiff uses the dictionary definitions of the words "final" and "rate" to leap to the conclusion (without explanation) that section 227.3's reference to "final rate" refers to the final rate of wages rather than the final rate of vested vacation. But nothing in the definition of either of those words can be used to suggest that the California Legislature was referring to wages rather than vacation pay. It is not as though the Legislature does not know how to do that. In the Healthy Workplaces, Healthy Families Act, the Legislature mandated that employers provide sick pay under qualifying conditions. The Act specifies the rate at which sick pay must be calculated for non-exempt employees:

> For the purposes of this section, an employer shall calculate paid sick leave using any of the following calculations:
>
> (1) Paid sick time for nonexempt employees shall be calculated in the same manner as the regular rate of pay for the workweek in which the employee uses paid sick time, whether or not the employee actually works overtime in that workweek.
>
> (2) Paid sick time for nonexempt employees shall be calculated by dividing the employee's total wages, not including overtime premium pay, by the employee's total hours worked in the full pay periods of the prior 90 days of employment.

Cal. Lab. Code § 246(*l*)(1), (2). Nowhere in section 227.3 does the Legislature use such language, for the obvious reason that unlike sick pay, which is prescribed by statute, vacation pay is a creature of contract—an employer is free to offer vacation pay, or not, and to set the rate of vacation pay. *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774, 783 (1982) ("[a] careful reading of the statute [...] indicates that the passage only means that the *amount* of vacation pay an employee is entitled to be paid as wages is to be determined with reference to the employer's policy." (emphasis in original); employees dissatisfied with employer's policy or terms of their contract are free to bring those concerns "to the employer or the bargaining table."); *Owen v. Macy's Inc.*, 175 Cal. App. 4th 462, 468 (2009) ("Labor Code section 227.3 does not require that an employer provide its employees with any paid vacation at all"); *Perez v. Performance Food Grp.*, No. LA CV17-00357 JAK (SKx), 2017 U.S. Dist. LEXIS 232642, at *34 (C.D. Cal. Dec. 15, 2017) (same). Unlike the Healthy Workplaces, Healthy Families Act with respect to sick pay, section 227.3 does not require employers to provide vacation or define the rate at which vacation must be paid. It regulates vacation provided by employers only in two respects: (1) vested vacation may not be forfeited; and (2) upon termination, vested vacation must be paid at the same rate if the vacation was taken, even if the vacation was accrued earlier at a different rate.

Plaintiff mischaracterizes Target's argument when she says that Target contends that an employer arbitrarily can pick any rate to pay vested vacation, even if that is not the rate that would be used if the vacation were taken. (ECF 55 at 16.) As Target points out in its opening brief (*see* ECF 49-1 at 12-13), the "final rate" at which an employee's vested vacation is paid out would be at whatever rate her vacation would have been paid had she taken a vacation at that time as a continuing employee (rather than terminating her employment). An employer can set the rate for vacation pay, but, once it does, it has to honor that rate, whether the vacation is taken or paid out upon termination.

Plaintiff also incorrectly applies the "last antecedent rule." Plaintiff argues that the final clause in the relevant sentence of section 227.3—"respecting eligibility or time served"—modifies the employer contract or policy language, and therefore an employer's policy "determines only whether an employee is entitled to accrue vacation … and the amount of vacation that she can accrue …" (ECF 55 at 18.) On the contrary, that language makes clear that it is the contract or policy providing vacation that determines the rate of vacation pay, and vested vacation must be paid out upon termination at the same rate applicable if the vacation were taken. To argue that the final wage rate controls, regardless of the contract or policy, disregards the statutory text.

**B. The DLSE Guidance Is on Point and Should Be Followed.**

Besides the text, Target's statutory interpretation is supported by the DLSE guidance, which plaintiff dismisses out of hand despite its support in case law.

Plaintiff does not dispute the relevance of the DLSE's November 17, 1986, Opinion Letter, which clearly explains that in calculating vacation pay due, one "would look to the basic vacation policy or agreement." That Opinion Letter is wholly consistent with Target's interpretation of section 227.3.

Nor can plaintiff refute what the DLSE said plainly in its January 28, 2003, Opinion Letter, which is directly on point here:

> Labor Code § 227.3 deals primarily with the protection of the vested vacation earned by the employee in the event of termination. The law directs the Labor

> Commissioner to enforce the "contract of employment or employer policy" with respect to vacation pay, but does not require that an employer have a vacation policy or, if the employer does have such a policy, does not dictate the terms of the policy respecting the amount paid. Most vacation policies are based on the wage paid to the worker on a regular basis. *However, under California law, an employer may choose to have a vacation policy which promises to pay a sum while the employee is on vacation which bears no relationship to the wage normally paid to the worker.*

Jan. 28, 2003, DLSE Opinion Letter (ECF 16 at 8-9) (emphasis supplied). Instead, plaintiff struggles with a comeback by arguing that because the Opinion Letter is "premised on the assumption that the employer 'change[d] [its] vacation policy'" and Target never told its employees that vested vacation would be paid out at their base rate, it is inapplicable here. (ECF 55 at 20.) But the Opinion Letter correctly observes that "[t]he law directs the Labor Commissioner to enforce the 'contract of employment or employer policy' *with respect to vacation pay*." (ECF 16 at 8.) The Opinion Letter does not say—nor does any other authority—that the employer has to make an express communication to employees that the rate of pay for vacation when taken will be the rate used when vested vacation is paid out upon termination. Just as envisioned by the Opinion Letter, Target did what section 227.3 requires—regardless of when plaintiff accrued her vacation, upon her termination her vested vacation was paid at the same rate she would have been paid had she instead taken her vacation—her hourly base rate, whatever that was at the time of termination. Plaintiff does not dispute that has been Target's consistent policy and practice and that Target followed it here.*

---

* The Opinion Letter also said that while an employer was free to reduce the rate for vacation prospectively, "any change in the 'method of calculation' would require that the employees be paid for the time vested under the calculation method used at the time the vacation pay was accrued." (ECF 16 at 9.) Whether that part of the Opinion Letter is correct does not matter here, as the record is undisputed that Target did not reduce the rate used to pay plaintiff's vacation—whether when taken or when cashed out upon her termination.

### C. *Drumm v. Morningstar, Inc.* Is Persuasive, While *Wang v. Chinese Daily News* Is Not on Point and Plaintiff Tries But Fails to Stretch Its Holding to Fit Here.

Target's position is also supported by persuasive case law, *Drumm v. Morningstar, Inc.* In *Drumm*, the court differentiated between the calculation of waiting-time penalties and vacation pay. The court first explained that an employee's wages—for the purposes of calculating waiting-time penalties—includes "the base rate, the piece rate, the commission and any bonus." *Drumm*, 695 F. Supp. 2d at 1019 (internal citation and quotation marks omitted). *By contrast*, the court explained:

> Vested vacation time ... is paid out as wages at the employee's final rate in accordance with such contract of employment or employer policy respecting eligibility or time served ... An employer *must*, in other words, *pay out vested vacation time at the rate at which the employee would have been paid during a vacation*, had he taken one.

*Id.* (internal citation, alteration, and quotation marks omitted) (emphasis supplied). The court held that the jury correctly followed this rule and awarded the proper amount in vested vacation time. *Id.* at 1020. *Drumm* is directly on point, fully supports Target's position, and is persuasive.

By contrast, as expected, plaintiff relies on *Wang v. Chinese Daily News*, 435 F. Supp. 2d 1042 (C.D. Cal. 2006), even though, as Target explained in its opening memorandum (ECF 49-1 at 14-15), that case is inapposite. *Wang* dealt with an employer's vacation buy-back policy, not cashing out vested vacation upon termination. The issue was "whether the 'unused vacation days' being purchased are already vested or accrued ... or whether they are not vested because [the employer's] vacation policy precludes employees from accruing more than a specified amount of vacation time." 435 F. Supp. 2d at 1048. The court made only one reference to section 227.3: "Pursuant to Cal. Labor Code § 227.3 and *Suastez*, Defendants' 'buy back' of unused, but accrued, vacation days should have been computed by reference to the employee's regular rate of pay." *Id.* at 1049. The court provided no analysis why "final rate" under section 227.3 should mean the same as "regular

rate of pay," and in context it seems clear that what the court meant was just that employees should not receive vacation cash-outs at a rate less than what would have been paid had the vacation been taken at that time.

To be sure, as plaintiff observes, elsewhere in its opinion the *Wang* court does note (correctly) that the regular rate of pay includes shift differentials received in the same workweek. 435 F. Supp. 2d at 1055. But nowhere does the court say that under the employer's vacation policy, vacation taken was paid at the employee's hourly base rate or a combination of the hourly base rate and a shift-differential rate. Therefore, the court's reference to "regular rate of pay" is, at best, unclear. If all the court meant was that to the extent vacation taken was paid at the employee's regular rate of pay, vested vacation had to be paid at the same rate, then *Wang* is consistent with *Drumm* (and Target's position). For plaintiff to try to stretch *Wang* to require vested vacation upon termination to be paid at a rate other than the established rate for vacation, when taken, finds no support in the actual text of the court's opinion.

### D. Plaintiff's Effort to Rationalize a Bizarre Scenario—Where the Legislature Requires Employers to Pay Departing Employees More Than Continuing Employees When It Comes to Vacation Pay—Has No Support in the Law or Common Sense.

As Target explained in its opening memorandum (ECF 49-1 at 15-16), the result of plaintiff's position if adopted would be that a terminating employee would get a bigger vacation payout than if the employee remained and took the vacation. That would be a bizarre outcome that finds no support in any authority—not the text of the statute, the DLSE guidance, or the case law—nor in common sense.

In response, plaintiff weakly suggests that the Legislature "believed that terminated employees are more likely to be denied pay for unused vacation" and thereby "required employers to pay out unused vacation at the employee's 'final rate.'" (ECF 55 at 21-22.) Plaintiff provides no support for that proposition, and she disregards the very strong disincentive for an employer to short-change an employee on her vested vacation—claims for waiting-time penalties under California Labor Code section 203 and civil penalties

under the Labor Code Private Attorneys General Act, just like the ones plaintiff makes here. Nor can plaintiff fall back on the notion that California wage-and-hour laws should be read liberally to protect employees. That may be true, but it never has been used to guarantee an automatic win for the employee in every case, or to override what a statute actually says. *See, e.g.*, *Rhea v. General Atomics*, 227 Cal. App. 4th 1560, 1571-73 (2014) (rejecting plaintiff's interpretation of Labor Code sections 221-223 in affirming summary judgment in favor of defendant, holding that employer's policy requiring use of vacation leave for partial-day absences did not violate section 227.3's prohibition against forfeiture).

Terminating employees are entitled to the full protection of the law, but not to a windfall based on a misinterpretation of the law. Plaintiff was treated the way the Legislature intended when it enacted section 227.3—upon termination she was paid for her vested vacation at the same rate she would have received had she taken her vacation. That is the correct result, not the bizarre outcome advocated by plaintiff.

### E. The Court's Prior Decision on the Motion to Dismiss Is Not Law of the Case Because It Has Not Been Upheld on Appeal and Target's Motion Presents Evidence That Could Not Have Been Considered on the Motion to Dismiss.

Plaintiff argues that the Court's decision on Target's motion to dismiss is "law of the case" and precludes summary judgment for Target now. Not so. First of all, the law of the case doctrine is inapplicable here because there has been no appellate court decision upholding the Court's ruling. *See Wyler Summit Pshp. v. Turner Broadcasting Sys.*, 235 F.3d 1184, 1193 (9th Cir. 2000) ("Under the law of the case doctrine, the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.") (internal quotation marks and citation omitted); *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1392 (9th Cir. 1995) ("Under the law of the case doctrine, … one panel of an appellate court will not reconsider matters resolved in a prior appeal to another panel in the same case.)".

Regardless, Target has presented new evidence since the Court issued its ruling on Target's motion to dismiss so that application of the law of the case doctrine would be

inappropriate. *See Leslie Salt Co.*, 55 F.3d at 1393 (law of the case doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power. Thus, the court may reconsider previously decided questions in cases in which ... new evidence has surfaced.") (internal quotation marks and citation omitted). On its motion to dismiss, Target argued that to state a claim for vested vacation to be paid upon termination at a higher rate than her hourly base rate, plaintiff had to allege a Target policy or contract so providing. (ECF 13 at 3-5.) The Court disagreed and denied the motion. *See* Order Denying Motion to Dismiss (ECF 20 at 6) ("Defendant argues that, to state a plausible claim under Section 227.3, Plaintiff must allege an employer policy or contract defining the rate of vacation pay. However, the Court finds that Defendant's authorities do not support that pleading requirement, particularly in the present case.").

Now, in this motion for summary judgment, Target presents evidence outside of plaintiff's complaint, including undisputed evidence that Target's consistent policy and practice has been to pay vacation—whether when taken or when paid out at termination—at the employer's hourly base rate (Brewer MSJ Decl. (ECF 49-2), ¶ 10 ); that shift differentials are for work performed at specified timed and never has been considered part of the rate at which vacation is paid (*see id.* at ¶ 8 ); that plaintiff never was promised to be paid for vacation at a rate other than her hourly base rate (Mills Depo. (ECF 49-3) at 131:16-22); and that when she left Target, she was paid all of her vested vacation at the correct rate under Target's consistent policy and practice (*see id.* at 142:7-17, 143:14-16, 144:12-15, 146:15-19, Exh. 17; ECF 49-2, ¶¶ 5, 11). Given this evidentiary showing, this Court is entitled to revisit its prior ruling and decide, as it should, that Target in fact paid plaintiff's vested vacation upon termination at the "final rate" as required by section 227.3. *See Turner v. County of Los Angeles*, No. 2:13-cv-04149-CAS-VBK, 2014 WL 7205036, at *9 (C.D. Cal. Dec. 16, 2014) (granting defendants' motion for summary judgment after denying their motion to dismiss; "the fact that the Court previously denied a motion to dismiss, which tests the sufficiency of the allegations, is insufficient to withstand summary judgment, which requires that claims have evidentiary support"); *Harden v. Soboro*, 2016

WL 259689, at *2 (granting summary judgment in favor of defendants; "In my ... order denying defendants' motion to dismiss, I noted that [plaintiff] had not yet had a chance to present evidence to support his claims, and I found that, taking all of his allegations as true, as I must on a motion to dismiss, his claims survived Rule 12(b)(6) scrutiny. ... But that decision does not preclude defendants from raising similar arguments at the summary-judgment stage and offering evidence to defeat [plaintiff's] claims. The standard for summary judgment is different than that for a motion to dismiss; I no longer take [plaintiff's] allegations as true.").

### III. TARGET HAS MET ITS BURDEN OF SHOWING WHY, AS A MATTER OF LAW, WAITING-TIME PENALTIES MAY NOT BE AWARDED, AND PLAINTIFF HAS FAILED TO RAISE A TRIABLE ISSUE OF FACT ABOUT TARGET'S GOOD-FAITH BELIEF IT WAS FOLLOWING THE LAW

As Target explained in its opening memorandum (ECF 49-1 at 18-19), even if plaintiff has raised a triable issue of fact whether she is owed additional pay for her vested vacation, summary judgment still should be granted against her claim for waiting-time penalties. That is because Target cannot be found to have acted willfully when it paid what it believed in good faith to have been all the vested-vacation pay to which plaintiff was entitled. The undisputed evidence on the motion shows that Target's intention always is to pay all wages owed (ECF 49-2, ¶ 9); that Target's consistent policy and practice is to pay vacation—whether when taken or when cashed out upon termination—at the employee's hourly base rate of pay (*see id.*, ¶ 10); and that plaintiff was paid for her vested vacation upon termination pursuant to that consistent policy and practice (*see id.*, ¶¶ 5, 10).

An employer cannot be sanctioned with waiting-time penalties for a mistake of law when the law is unsettled. 8 Cal. Code Regs. § 13520; *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 8, 12 (1981) (no liability for waiting-time penalties, even though court held that employer was not entitled to take offset from wages owed at termination, because law of wage offsets was unsettled at the time). Here, the law is unsettled, in that there is no appellate authority that "final rate" as used in section 227.3 means the employee's final

rate of wages, rather than final rate of vacation pay. If anything, the weight of authority favors Target's position—the text of the statute, the DLSE guidance and *Drumm v. Morningstar, Inc.*, all support Target's construction of section 227.3, while to get to the result she wants, plaintiff has to ignore the text of section 227.3 and rely on a case—*Wang v. Chinese Daily News*—that does not hold what plaintiff would like it to hold.

Plaintiff's argument why Target can be held liable for waiting-time penalties is hard to follow. In part, she seems to contend that all that matters is whether Target is right or wrong on the underlying claim for additional vested-vacation pay. (ECF 55 at 23-24.) But we know that is not so. 8 Cal. Code Regs. § 13520; *Barnhill*, 125 Cal. App. 3d at 8, 12. In part, she seems to contend that an employer cannot invoke the good-faith defense against waiting-time penalties unless it first undertakes a thorough review of the state of law. (ECF 55 at 25-26.) Plaintiff offers no authority for that novel proposition; certainly in *Barnhill*, there was no such requirement imposed. Ignorance of the law is no excuse, but when the law is unsettled, a defendant may not be penalized for not guessing correctly what a court will pronounce the law to be. *Barnhill*, 125 Cal. App. 3d at 8, 12; *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1202 (2008) (employer's conduct was not willful because "the legal obligations imposed on employers ... were unclear at the time of [employer's] violations").

## IV. CONCLUSION

Target's construction of section 227.3 is supported by the statutory text, the DLSE guidance, persuasive case law, and common sense. Plaintiff's interpretation ignores the statutory text and the DLSE guidance, relies on a case that is not on point, and belies common sense. Target is entitled to summary judgment on all of plaintiff's claims, or, at minimum, given its undisputed good faith, plaintiff's claim for waiting-time penalties.

Dated: June 14, 2021.

JEFFREY D. WOHL
LINDSEY C. JACKSON
PAUL HASTINGS LLP
By:      */s/ Jeffrey D. Wohl*
              Jeffrey D. Wohl
Attorneys for Defendant Target Corporation