JEFFREY D. WOHL (Cal. State Bar No. 096838)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone:   (415) 856-7000
Facsimile:    (415) 856-7100
jeffwohl@paulhastings.com

LINDSEY C. JACKSON (Cal. State Bar No. 313396)
PAUL HASTINGS LLP
515 S. Flower Street, 25th Floor
Los Angeles, California 90071
Telephone:   (213) 683-6000
Facsimile:    (213) 627-0705
lindseyjackson@paulhastings.com

Attorneys for Defendant
Target Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CINNAMON MILLS, individually, on a representative basis, and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>vs.<br><br>TARGET CORPORATION; a Minnesota corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | No. 5:20-cv-01460 JGB (KKx)<br><br>**SUPPLEMENTAL DECLARATION OF JEFFREY D. WOHL IN SUPPORT OF DEFENDANT TARGET CORPORATION'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          June 28, 2021<br>Time:          9:00 a.m.<br>Courtroom: 1 (3470 Twelfth St., Riverside)<br>Judge:         Hon. Jesus G. Bernal<br><br>Action filed:       June 10, 2020 (state court)<br>Action removed: July 22, 2020<br>Trial date:          December 14, 2021 |

I, Jeffrey D. Wohl, declare:

1. I am a member of the Bar of this Court, a partner with Paul Hastings LLP, and one of the attorneys representing defendant Target Corporation ("Target") in this action. I make this declaration in support of Target's motion for summary judgment. I have personal knowledge of the matters set forth in this declaration and could and would competently testify to them under oath if called as a witness.

2. Attached to this declaration as Exhibit A are true and correct copies of excerpts from the deposition of plaintiff Cinnamon Mills referenced in Target's Response to Plaintiff's Statement of Genuine Disputes of Material Facts and Statement of Undisputed Facts in Support of Opposition to Target's Motion for Summary Judgment ("Target's Response").

3. Attached to this declaration as Exhibit B are true and correct copies of excerpts from the deposition of Michael Brewer referenced in Target's Response.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 14, 2021, at Hillsborough, California.

/s/ Jeffrey D. Wohl<br>
Jeffrey D. Wohl

# EXHIBIT A

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4   CINNAMON MILLS, individually,
     on a representative basis, and
 5   on behalf of all
     others similarly situated,
 6                                          No. 5:20-cv-01460 JGB
               Plaintiff,                   (KKx)
 7
         vs.
 8

 9   TARGET CORPORATION; a
     Minnesota corporation; and
10   DOES 1 through 20, inclusive,

11            Defendants.

12   ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

13

14

15
             VIDEOTAPED REMOTE DEPOSITION OF
16
                 CINNAMON MILLS, VOLUME 2
17

18                  February 22, 2021

19
                        10:00 a.m.
20

21                  Riverside, California

22

23
               Karen Aligo, CSR No. 13418
24

25
```



800.211.DEPO (3376)
EsquireSolutions.com

EXHIBIT A, Page 4

```
 1              (Exhibit 13 marked for identification.)
 2              THE WITNESS:  There it is.  Okay.
 3    BY MR. WOHL:
 4        Q.  Okay.  So do you recognize this as your
 5    application form for your job at Target at
 6    Riverside?
 7        A.  Yes, I do.
 8        Q.  Is that your electronic signature on the
 9    second page?
10        A.  Yes.
11        Q.  And you submitted this, it looks like, on
12    July 8, 2016?
13        A.  Yes.
14        Q.  So given what you've already told me about
15    how -- besides Kmart, how you were spending your
16    time during your break from Target, what made you
17    come back to Target in July of 2016?
18        A.  I figured I had worked at the company
19    before, and I figured I could come back with the
20    experience that I had had prior.  I figured I would
21    give it another go.
22        Q.  Okay.  Did you know anybody at Target
23    Riverside before you applied?
24        A.  I did.
25        Q.  Who did you know at Target Riverside --
```

```
 1  that correct?
 2       A. Yes, that would be this last time, yes.
 3       Q. Okay.  And the time before, correct?
 4       A. Yes.
 5       Q. Okay.
 6       A. That is correct.
 7       Q. So now let's go to what I think was your
 8  wage statement when you left Target, and so if you
 9  turn to what will be Exhibit 17.
10            MR. WOHL:  And Lindsey, that will be Tab 7.
11            (Exhibit 17 marked for identification.)
12            THE WITNESS:  Okay.  So let me --
13  BY MR. WOHL:
14       Q. Yeah, Lindsey will pull that up
15  momentarily.
16       A. Okay.  Okay.  This -- yeah, this is my
17  final paycheck.
18       Q. Okay.  Your last day at Target was May 2nd,
19  2020 -- or May 1st, 2020?  Was that --
20       A. Yes, that is correct.
21       Q. Okay.  So you got your final paycheck, and
22  so this has a lot of different items of payment, and
23  one was you had a health check.  Do you know what
24  the health check was for?
25       A. No.
```



1     A. No, it was just me and Tami.

2     Q. Okay. So tell me from your perspective
3  what happened in the conversation.
4     A. I went in early, like I always do.
5  Something told me to go in early. And I was going
6  to clock in. Something told me not to, usually
7  maybe five minutes, but something told me not to. I
8  started to walk into the HR office, and Tami told
9  me, "Come here, I want to sit down and talk to you."
10 And that's when she told me that, you know, they
11 were going to go ahead and let me go.
12         And I said "Why?" And she started to tell
13 me that my performance was poor, that my guest
14 service was poor, I had too many guest complaints.
15 And I kind of started to chuckle, and I said, "Are
16 you serious?" And she said, "Well, yeah." And I
17 said, "Really? I thought I was doing good,
18 considering I've been here for four years, and it's
19 never been a problem before, and all of a sudden
20 it's a problem now." And she said, "Well, things do
21 change."
22         And I didn't want to argue with her. I
23 just sat there quietly, and I was like, "Okay." At
24 that point I felt defeated, upset because I thought
25 I was doing a good job. So -- and I just took my

1  paperwork, she handed me the money in a envelope,
2  and she said, "Well, when one door closes, another
3  one opens."  I said, "Oh, indeed, yes, it does."
4  Well -- I said, "Well, thank you for the
5  opportunity.  Hope things go good for you guys," and
6  I left.
7        Q.  And this was a surprise to you, even though
8  you knew you were on extended warning and you knew
9  you had -- you didn't acknowledge having all these
10 conversations, but you certainly acknowledged having
11 some of these conversations about these performance
12 issues.  Why, therefore, was it a surprise that you
13 were being terminated?
14       A.  Because I've never had, like I said --
15 prior to now, you know, I've never been -- with all
16 these little write-ups and everything like that --
17 I'm not an aggressive person.  I'm not, you know --
18 all these little write-ups -- these guests could
19 have literally punched me in the face.  I got spat
20 on, spit on, I guess you could say.  During this
21 whole thing I'm sitting there having to duck and
22 cover making sure I don't get stabbed, possibly shot
23 at, I'm not trying to argue with these guests, let
24 alone my bosses.  I'm trying to have a halo on my
25 head, and be like, Okay, because I don't want to



```
 1                    REPORTER'S CERTIFICATION

 2

 3            I, the undersigned, a Certified Shorthand

 4   Reporter of the State of California, do hereby

 5   certify:

 6            That the foregoing proceedings were taken

 7   before me at the time and place herein set forth;

 8   that any witnesses in the foregoing proceedings,

 9   prior to testifying, were placed under oath; that a

10   verbatim record of the proceedings was made by me

11   using machine shorthand which was thereafter

12   transcribed under my direction; further, that the

13   foregoing is an accurate transcription thereof.

14            I further certify that I am neither

15   financially interested in the action nor a relative

16   or employee of any attorney of any of the parties.

17            IN WITNESS WHEREOF, I have this date

18   subscribed my name.

19

20   Dated:   March 5, 2021

21
```



```
22   _____

23   KAREN ALIGO
     CSR No. 13418
24

25
```

# EXHIBIT B

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

```
CINNAMON MILLS, individually, on  )
a representative basis, and on    )
behalf of all others similarly    )
situated,                         )
                                  )
            Plaintiff,            )
                                  )
     vs.                          ) No. 5:20-cv-01460-
                                  )     JGB-KK
TARGET CORPORATION, a Minnesota   )
Corporation; and DOES 1 through   )
20, inclusive,                    )
                                  )
            Defendants.           )
_____)
```

VOLUME I

VIDEOCONFERENCE DEPOSITION OF 30(b)(6) WITNESS

MICHAEL BREWER

Wednesday, March 24, 2021

REPORTED BY:  Lyn Corrin Aaker, CSR No. 6228

EXHIBIT B, Page 11

Case 5:20-cv-01460-JGB-KK   Document 57-1   Filed 06/14/21   Page 12 of 13   Page ID #:710

30(b)(6) Michael Brewer (v.I)
Cinnamon Mills vs. Target Corporation

```
 1   of pay documentation as required by the state of
 2   California, which would identify what their base rate is.
 3   And then if there is any type of pay rate change in their
 4   base pay, they are notified of that as well during the
 5   course of their employment.
 6       Q.   Understandable, but how are they told what rate
 7   they were paid for vacation?
 8       A.   I don't know specifically that they are told.
 9   They are paid for their vacation at their base pay rate.
10   That is our policy.
11       Q.   I understand that's Target's practice.  But are
12   California employees ever told what rate they will be paid
13   for vacation?
14       A.   Not to my knowledge.
15            MR. WOHL:  Just so we're clear, Peter, you mean
16   other than what appears on the wage statement itself?
17            MR. CARLSON:  Good point, yes.
18       Q.   So other than the proof of payment on the wage
19   statement itself, are California employees ever told the
20   rate at which they will be paid for vacation?
21       A.   No.  There's nothing that I know of to
22   communicate what the rate would be other than what appears
23   on their wage statement.
24       Q.   So prior to taking vacation, they are never
25   informed what that vacation rate will be.  Is that
```

Case 5:20-cv-01460-JGB-KK   Document 57-1   Filed 06/14/21   Page 13 of 13   Page ID #:711

30(b)(6) Michael Brewer (v.I)
Cinnamon Mills vs. Target Corporation

|   |   |
|---|---|
| 1 | REPORTER'S CERTIFICATE |
| 2 | |
| 3 | I, the undersigned Certified Shorthand Reporter |
| 4 | holding a valid and current license issued by the State of |
| 5 | California, do hereby certify: |
| 6 | That said proceedings were taken down by me in |
| 7 | shorthand at the time and place therein set forth and |
| 8 | thereafter transcribed under my direction and |
| 9 | supervision. |
| 10 | I further certify that I am neither counsel for |
| 11 | nor related to any party to said action, nor in any way |
| 12 | interested in the outcome thereof. |
| 13 | Before completion of the deposition, review of the |
| 14 | transcript [ x  ]was [   ]was not requested. |
| 15 | The dismantling, unsealing, or unbinding of the |
| 16 | original transcript will render the Reporter's |
| 17 | Certificate null and void. |
| 18 | IN WITNESS WHEREOF, I have hereunto subscribed |
| 19 | my name on this date: April 1st, 2021. |
| 20 | |
| 21 | |
| 22 | |
| 23 | _____ |
| 24 | Certified Shorthand Reporter |
| 25 | |