UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.  **EDCV 20-1460 JGB (KKx)**  Date  July 29, 2021

Title  *Cinnamon Mills v. Target Corporation et al.*

---

Present: The Honorable  JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):  Attorney(s) Present for Defendant(s):

None Present  None Present

**Proceedings:**  Order (1) GRANTING-IN-PART and DENYING-IN-PART Defendant's Motion for Summary Judgment (Dkt. No. 49); (2) GRANTING Plaintiff's Motion for Class Certification (Dkt. No. 48); and (3) VACATING the August 2, 2021 hearing (in Chambers)

Before the Court are two motions: Defendant Target Corporation's motion for summary judgment and Plaintiff Cinnamon Mills's motion to certify class. ("MSJ," Dkt. No. 49; "MCC," Dkt. No. 48 (collectively, "Motions").) The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. Upon consideration of the papers filed in support of and in opposition to the Motions, the Court GRANTS IN PART and DENIES IN PART Defendant's MSJ and GRANTS Plaintiff's MCC. The August 2, 2021 hearing is VACATED.

## I.  BACKGROUND

On June 10, 2020, Plaintiff, on behalf of herself and all others similarly situated, filed a complaint against Defendant and Does 1-20 in the Superior Court of California for the County of Riverside. ("Complaint," Dkt. No. 1-1.) Defendant removed the action to federal court on July 22, 2020. (Dkt. No. 1.) On August 28, 2020, the Court denied Defendant's motion to dismiss the Complaint. ("MTD Order," Dkt. No. 20; see Dkt. No. 12.)

On September 21, 2020, Plaintiff amended her complaint. (Dkt. No. 25.) On March 11, 2021, Plaintiff filed a second amended complaint modifying the class definition to individuals who received a shift differential pay during their last workweek worked for Defendant. ("SAC," Dkt. No. 43.) The SAC alleges five causes of action: (1) failure to pay vested vacation under Cal.

Lab. Code § 223.7 ("Section 223.7"), (2) failure to timely pay final wages under Cal. Lab. Code §§ 201 and 203; (3) unfair and unlawful competition under Cal. Bus. & Prof. Code § 17200 et seq.; (4) failure to pay vested vacation under Cal. Lab. Code § 227.3, assessed under the California Private Attorneys General Act ("PAGA"); and (5) failure to timely pay final wages under Cal. Lab. Code §§ 201-203, assessed under PAGA. (See SAC.)

On May 24, 2021, Defendant filed the MSJ along with the following documents:

- Declaration of Michael Brewer (Dkt. No. 49-2);
- Declaration of Jeffrey D. Wohl (Dkt. No. 49-3);
- Statement of Undisputed Facts ("SUF," Dkt. No. 50); and
- Request for Judicial Notice ("RJN," Dkt. No. 51).[1]

On June 7, 2021, Plaintiff opposed the MSJ. ("MSJ Opposition," Dkt. No. 55.) In support, Plaintiff submitted a Separate Statement of Genuine Disputes of Material Fact and a Declaration of Peter J. Carlson. ("SUF Opposition," Dkt. No. 55-1; Dkt. No. 55-2). On June 14, 2021, Defendant replied in support of its MSJ. ("MSJ Reply," Dkt. No. 58.) In support of the MSJ Reply, Defendant submitted a Supplemental Declaration of Jeffrey D. Wohl and a Reply to Statement of Disputed Material Facts (Dkt. No. 58-1; "SUF Reply," Dkt. No. 59).

On May 24, 2021, Plaintiff filed the MCC and the following documents in support:

- Declaration of Peter J. Carlson ("Carlson Declaration," Dkt. No. 48-1) and exhibits (Dkt. No. 48-2);
- Declaration of Brian J. Mankin ("Mankin Declaration," Dkt. No. 48-3);
- Declaration of Deepak Gupta ("Gupta Declaration," Dkt. No. 48-4); and
- Declaration of Cinnamon Mills ("Mills Declaration," Dkt. No. 48-5).

Defendant opposed the MCC on June 7, 2021. ("MCC Opposition," Dkt. No. 54.) In support of the MCC Opposition, Defendant also filed the declarations of Michael Brewer and Paul F. White. (Dkt. Nos. 54-1, 54-2.) On June 14, 2021, Plaintiff replied in support of her MCC. ("MCC Reply," Dkt. No. 56.) In support of the MCC Reply, Plaintiff also filed a supplement declaration of Peter J. Carlson. (Dkt. No. 56-1.)

---

[1] "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). An adjudicative fact may be judicially noticed if it is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Id. at (b). Defendant requests that the Court take notice of a Division of Labor Standards Enforcement Example Itemized Wage Statement. (RJN.) This document is relevant to the Motions and in the public record. Courts routinely take notice of these types of documents. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). The Court GRANTS Defendant's RJN.

## II.    FACTS

Except as noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for purposes of the MSJ. See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

Defendant, a retail corporation, employed Plaintiff as an hourly non-exempt employee at its Redlands store from 2006 to 2008 and at its Riverside store from 2016 to May 1, 2020. (SGD ¶¶ 1, 2.) When Plaintiff left Defendant's employ on May 1, 2020, she was paid for her 18.63 hours of vested vacation at her then-current hourly base rate of $13.00 per hour. (Id. ¶ 3.)

Defendant's consistent practice has been to pay its non-exempt California employees for vacation hours at their then-current base hourly rate, whether the employee exercises the vacation time or cashes it out upon termination of their employment. (Id. ¶ 4.) When Plaintiff took vacation while in Defendant's employ, she was paid, per this practice, at her then-current hourly base rate. (Id. ¶ 5.)

Defendant pays shift differentials in addition to the hourly base rate for work performed at special times, such as certain overnight shifts or during the COVID-19 pandemic. (Id. ¶ 6.) Shift differentials are paid only for the work performed and never have been part of the rate of pay for vacation, whether paid when taken or cashed out upon termination. (Id. ¶ 7.) At the time of her termination in May 2020, Defendant was paying Plaintiff a temporary COVID $2.00 shift differential on top of her $13.00 hourly base rate. (Id. ¶ 8.)

## III.    LEGAL STANDARD

**A.    Summary Judgment**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Id. at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case. Id.; In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

If the moving party has sustained its burden, the non-moving party must then show that there is a genuine issue of material fact that must be resolved at trial. Celotex, 477 U.S. at 324. The non-moving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477

U.S. at 252.  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  In re Oracle, 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party.  Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991).  Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the non-moving party based on the record taken as a whole.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**B.   Class Certification**

Federal Rule of Civil Procedure ("Rule 23") governs the litigation of class actions.  A party seeking class certification must establish the following prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  After satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate one of the following: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; (2) the defendant has treated the members of the class as a class, making appropriate injunction or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action.  See Fed. R. Civ. P. 23(b)(1-3).

A trial court has broad discretion regarding whether to grant a motion for class certification.  See Bateman v. Am. Multi-Cinema, Inc., 623 F.3d, 708, 712 (9th Cir. 2010).  However, "[a] party seeking class certification must affirmatively demonstrate compliance with [Rule 23]—that is, the party must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).  A district court must conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claims."  Id. at 351.  "Courts typically proceed claim-by-claim in determining whether the Rule 23 requirements have been met, particularly as to the Rule 23(a)(2) and (b)(3) requirements of common questions and predominance."  Allen v. Verizon California, Inc., 2010 WL 11583099, at *2 (C.D. Cal. Aug. 12, 2010).  A "district court must find by preponderance of the evidence that the plaintiff has established predominance under Rule 23(b)(3)."  Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 993 F.3d 774, 784 (9th Cir. 2021).

Rule 23 further provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4), or the "class may be divided into subclasses that are each treated as a class under this rule," Fed. R. Civ. Pro. 23(c)(5). "This means that each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." Betts v. Reliable Collection Agency, Ltd., 659 F.2d 1000, 1005 (9th Cir. 1981).

### IV.  DISCUSSION

**A.  Motion for Summary Judgment**

**1.  Section 227.3**

Defendant moves for summary judgment on Plaintiff's claim for vested vacation pay under Section 227.3, the legal question underpinning all of Plaintiff's causes of action. Section 227.3 provides in relevant part:

> [W]henever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served.

The disagreement at the heart of this case is simple: does "final rate" refer to the base rate at the time of termination (i.e., $13 an hour for Plaintiff) or to the base rate plus any shift differentials at the time of termination (i.e., $15 an hour for Plaintiff)?

The Court has considered this question already. In the MTD Order, the Court accepted Plaintiff's argument that "final rate" includes base pay and shift differentials. (MTD Order at 5, 7.) Plaintiff now contends that that holding is law of the case and therefore controls; Defendant contends that the Court's earlier holding does not control and that the Court should consider the question anew. (MSJ Opposition at 4, MSJ Reply at 9.)

"The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs . . . Under the doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court[.]" United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000) (internal citations omitted). The exceptions to the law of the case doctrine largely mirror the standard in a motion for reconsideration. "A court may have discretion to depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997). "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." Id. (citing Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993)).

On first impression, the Court's earlier holding appears to be law of the case. Defendant raises two objections. First, Defendant claims that the law of the case doctrine applies only when an appellate court has made a ruling. (Reply at 9.) Not so. While Defendant's cited authorities demonstrate that, of course, a ruling by an appellate court becomes the law of the case, those authorities do not stand for the proposition that a higher court's ruling is the <u>only</u> scenario in which the law of the case doctrine applies. To the contrary: the Ninth Circuit has explicitly approved a district court judge deferring to an earlier district court ruling in the same case under the law of the case doctrine. <u>Lummi Indian Tribe</u>, 235 F.3d at 452 (9th Cir. 2000). Second, Defendant claims that it has raised new facts, and thus that the Court may revisit its earlier decision. (MSJ Reply at 8-9.) But none of Defendant's new facts disturb the Court's earlier statutory analysis.

The Court thus determines that the law of the case doctrine applies and DENIES Defendant's motion as to its Section 227.3 claims.

### 2. Willfulness

Defendant also moves for summary judgment on Plaintiff's waiting-time penalties claim under Cal. Lab. Code § 203, which penalizes an employer who "willfully fails to pay . . . any wages of an employee who is discharged or who quits." Cal. Lab. Code § 203(a). "The term 'willful' within the meaning of section 203[] means the employer intentionally failed or refused to perform an act which was required to be done." <u>Rd. Sprinkler Fitters Loc. Union No. 669 v. G & G Fire Sprinklers, Inc.</u>, 102 Cal. App. 4th 765, 781 (2002). A party's withholding of payment in the face of genuine legal disputes is not willful. <u>Barnhill v. Robert Saunders & Co.</u>, 125 Cal. App. 3d 1, 8 (Ct. App. 1981).

Plaintiff makes much of Defendant's failure to prove a good-faith defense to this charge. (MSJ Opposition at 17.) But Plaintiff's claim has a more fundamental error: Plaintiff has shown no facts to support a finding of willfulness. This dispute turns upon an undeveloped area of law. Nothing in the record suggests that Defendant's payments were based on anything other than its understanding of the law – a conception that the Court disagrees with, but hardly an unreasonable understanding. The Court therefore GRANTS summary judgment to Defendant on the second claim.

### B.     Motion to Certify Class

Plaintiff moves to certify a class of "[a]ll former non-exempt employees that were employed by Defendants in the State of California that, from June 10, 2016 to present, (a) received a shift differential pay during the last workweek worked, (b) had vested vacation owed upon separation of employment, and (c) were paid for vested vacation at a rate that did not include the shift differential pay." (MCC at 3.) Plaintiff also seeks an order (1) appointing Plaintiff as class representative and (2) appointing Brian J. Mankin and Peter J. Carlson of Lauby,

Mankin & Lauby LLP and Deepak Gupta and Neil Sawhney of Gupta Wessler PLLC as class counsel. (Id.)

1. **Requirements of Rule 23(a)**

    a. **Numerosity**

    Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable. See Fed. R. Civ. P. 23(a)(1). To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity. Id. However, 40 or more members will generally satisfy the numerosity requirement. Id. A plaintiff has the burden to establish that this requirement is satisfied. United Steel, Paper & Forestry, Rubber, Mfg. Energy v. Conoco Phillips Co., 593 F.3d 802, 806 (9th Cir. 2010). Plaintiff's proposed class is likely to exceed 3,000 members. (MCC at 8.) Accordingly, the Court concludes that the numerosity requirement is satisfied.

    b. **Commonality**

    The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention … capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). Here, Plaintiff alleges all class members' claims flow from the same alleged injury—that Defendant's vested vacation pay practice injured them by failing to pay their vested vacation at their "final rate." (See MCC.) These claims are subject to a common legal theory because Plaintiff challenges the vested vacation pay practice as a whole. Accordingly, the Court concludes Plaintiff has established commonality.

    c. **Typicality**

    "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanlon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover No. Am., 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanlon, 976 F.2d at 508). Because typicality is a permissive standard, the claims of the named plaintiff need not be identical to those of the other class members. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

    Defendant argues that Plaintiff's claim is not typical of the class because (1) she did not suffer a cognizable injury and (2) Plaintiff's Covid-19 shift deferential claim is not the same as ordinary shift differentials. (MCC Opposition at 5, 11.)

Defendant's first argument is an ultimately meritless quasi-standing argument. Defendant contends that under its characterization of Section 227.3, Plaintiff did not suffer an injury because its practice of paying vacation at the current base hourly rate complies with the "final rate" of vacation pay that would be used if vacation were taken. (Id. at 1.) This confuses standing with the merits. Of course, if the Court were to find that Defendant's interpretation of Section 227.3 controls, Plaintiff would not suffer injury under the law. But the same is true in all lawsuits.

Second, Defendant contends that Plaintiff's claims are typical only of members of the putative class who received COVID shift differentials, but not of members of the putative class who received ordinary shift differentials (i.e., for overnight shifts). Defendant therefore contends that Plaintiff "cannot represent those who did earn those ordinary shift differentials in their last week of employment." (MCC Opposition at 11.) However, Plaintiff's claims arise from the same practice that impacted all members of the putative class: Defendant's practice of paying vested vacation at employees' base hourly rate without including differential pay. Thus, the Court finds that Plaintiff meets the typicality requirement.

### d. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and her counsel have any conflicts of interest with any class member and whether the proposed class representative and her counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011). Plaintiff has submitted a declaration indicating that she will prosecute the action vigorously on behalf of the class. (See Mills Declaration.) Plaintiff's counsel has also submitted a declaration listing their qualifications and experience with class action litigation. (See Carlson Declaration, Mankin Declaration, Gupta Declaration.) Defendant does not contest the adequacy of either Plaintiff or her counsel. Accordingly, the Court finds that Plaintiff and proposed class counsel meet the adequacy requirement of Rule 23(a).

### 2. Requirements of Rule 23(b)

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 624 (1997). Plaintiff seeks to certify the class under Rule 23(b)(3), which requires that common questions of law or fact predominate over individual questions and that a class action be superior to other potential methods of adjudication. Fed. R. Civ. P. 23(b)(3).

When considering if the predominance aspect of Rule 23(b)(3) has been met, "a key factual determination courts must make is whether the plaintiffs' statistical evidence sweeps in uninjured class members." Bumble Bee Foods, 993 F.3d at 791. To make such a determination,

"Plaintiffs must establish, predominantly with generalized evidence, that all (or nearly all) members of the class suffered damage" stemming from a defendant's conduct. Id. If a substantial number of those class members "in fact suffered no injury," the "need to identify those individuals will predominate" over classwide issues. In re Asacol Antitrust Litig., 907 F.3d 42, 53 (1st Cir. 2018). Though there is no established threshold for how great a percentage of uninjured class members is sufficient to defeat predominance, it cannot be de minimis. Bumble Bee Foods, 993 F.3d at 792.

Plaintiff presents a single question she contends predominates: "Does [Defendant's] uniform and class-wide practice of failing to pay vested vacation at a final rate including shift differentials violate [Section] 227.3?" (MCC Reply at 8.) Plaintiff contends that if Defendant's practice of paying employees' vested vacation at their base hourly rate without including shift differential pay is found to violate Section 227.3, then under the class definition proposed, "every class member will have suffered an injury." (Id. at 5 (emphasis in original).) The Court finds the predominance requirement is satisfied.

### 3. Request to Limit Class

Defendant requests that the Court limit the class to employees who received the Covid-19 shift differential and exclude employees who received ordinary shift differentials. Defendant raises two arguments in support: (1) Plaintiff herself did not earn any ordinary shift differentials, and (2) individualized inquiries for class members who received an ordinary shift differential will be required to determine if they suffered an injury. (MCC Opposition at 9-10.)

As discussed in the Typicality section above, the claims of the named plaintiff need not be identical to those of other class members. Hanlon, 150 F.30 at 1020. Plaintiff's underlying legal question is identical to that of all class members.

Defendant's second argument fares no better. Defendant argues that there is no consistent, manageable, classwide way to determine the "final rate" of pay. (MCC Opposition at 9.) Not so. Rather, as Plaintiff points out, once the Court has decided the single legal question at issue, what remains is arithmetic. Other courts have taken similar approaches. For example, in Sevilla v. Aaron's, Inc., in certifying a class of employees who were improperly paid vested vacations wages, the court held that while "[d]etermining which employees were terminated while holding vested vacation hours and determining which of those employees earned incentive payments during their final pay period" might "require individual damages analysis, … this analysis is subject to common proof through Defendant's payroll system." 2019 WL 2879874, at *4 (C.D. Cal. 2019). Because the Ninth Circuit has "repeatedly confirmed … that the need for individuated findings as to the amount of damages does not defeat class certification," Vaquero v. Ashley Furniture Indus., Inc., 824 F.3d 1150, 1155 (9th Cir. 2016), the Court DENIES Defendant's request to limit class certification.

//
//

## V.   CONCLUSION

For the reasons above, the Court GRANTS IN PART and DENIES IN PART Defendant's MSJ and GRANTS Plaintiff's MCC.  Accordingly, the Court:

- GRANTS summary judgment as to Defendant on the second cause of action;
- CERTIFIES the above-described class;
- APPOINTS Plaintiff Cinnamon Mills as the representative for the class;
- APPOINTS Brian J. Mankin and Peter J. Carlson of Lauby, Mankin & Lauby LLP and Deepak Gupta and Neil Sawhney of Gupta Wessler PLLC as Class Counsel; and
- VACATES the August 2, 2021 hearing.


**IT IS SO ORDERED.**