UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 20-1460 JGB (KKx)** | Date | July 8, 2024 |
| Title | *Cinnamon Mills v. Target Corporation, et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Phyllis A. Preston |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Peter Carlson | Jeffrey D. Wohl |

**Proceedings:** Order (1) GRANTING Plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. No. 99); and (2) GRANTING Plaintiff's Motion for Attorneys' Fees (Dkt. No. 100).

Before the Court are Plaintiff's unopposed motion for final approval of class action settlement ("Final Approval Motion," Dkt. Nos. 99, 104) and motion for award of attorneys' fees, costs and service payment ("Fees Motion," Dkt. No. 100) (jointly, the "Motions"). After considering the papers filed in support of the Motions, as well as oral argument on July 8, 2024, the Court **GRANTS** the Motions.

## I. BACKGROUND

On June 10, 2020, plaintiff Cinnamon Mills ("Ms. Mills" or "Plaintiff"), on behalf of herself and all others similarly situated, filed a complaint against defendant Target Corporation ("Defendant" or "Target") and Does 1-20 in the Superior Court of California for the County of Riverside. ("Complaint," Dkt. No. 1-1.) Defendant removed the action on July 22, 2020. (Dkt. No. 1.) On August 28, 2020, the Court denied Defendant's motion to dismiss the Complaint. ("MTD Order," Dkt. No. 20; see Dkt. No. 12.)

On September 21, 2020, Plaintiff amended her complaint. (Dkt. No. 25.) On March 11, 2021, Plaintiff filed a second amended complaint modifying the class definition to individuals who received a shift differential pay during their last workweek worked for Defendant. ("SAC," Dkt. No. 43.) The SAC alleges five causes of action: (1) failure to pay vested vacation under Cal. Lab. Code § 223.7 ("Section 223.7"), (2) failure to timely pay final wages under Cal. Lab. Code §§ 201 and 203; (3) unfair and unlawful competition under Cal. Bus. & Prof. Code § 17200 et

seq.; (4) failure to pay vested vacation under Cal. Lab. Code § 227.3, assessed under the California Private Attorneys General Act ("PAGA"); and (5) failure to timely pay final wages under Cal. Lab. Code §§ 201-203, assessed under PAGA. (See SAC.)

On May 24, 2021, Defendant filed a motion for summary judgment. ("MSJ," Dkt. No. 49.) On May 24, 2021, Plaintiff filed a motion to certify class. ("MCC," Dkt. No. 48.) On July 29, 2021, the Court granted in part and denied in part the MSJ and granted the MCC. ("MCC Order," Dkt. No. 69.) On December 6, 2021, the parties cross-appealed to the Ninth Circuit. (Dkt. Nos. 79, 80.) On March 6, 2023, the Ninth Circuit affirmed the Court's grant of summary judgment. (Dkt. No. 82.)

On July 29, 2021, the Court certified the following class: "All former non-exempt employees that were employed by Defendants in the State of California that, from June 10, 2016 to present, (a) received a shift differential pay during the last workweek worked, (b) had vested vacation owed upon separation of employment, and (c) were paid for vested vacation at a rate that did not include the shift differential pay." (MCC Order at 6.)

On August 16, 2023, Defendant filed a notice of settlement and the Court placed the case in inactive status. (Dkt. Nos. 85, 86.) On October 13, 2023, Plaintiff filed a request to reopen the case. ("Request," Dkt. No. 87.) The same day, Plaintiff filed an unopposed motion for preliminary approval of class action settlement, along with a notice of errata. ("Preliminary Approval Motion," Dkt. Nos. 88-89.) On December 15, 2023, the Court granted the Preliminary Approval Motion. ("Preliminary Approval Order," Dkt. No. 97.)

On March 25, 2024, Plaintiff filed this Final Approval Motion and Fees Motion—both are unopposed. (Final Approval Motion; Fees Motion.) On March 27, 2024, Defendant filed the declaration of Jeff D. Wohl. ("Wohl Decl.," Dkt. No. 103.)

## II. LEGAL STANDARD

### A. Class Action Settlement

A court may approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To determine whether a settlement meets that standard, courts consider the following non-exhaustive factors:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted).

Whether to approve a class action settlement is committed to the court's "sound discretion." Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). Although a strong judicial policy favors settlement of class actions, see id., the court must examine the settlement as a whole for overall fairness. Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)). Neither district courts nor appellate courts have the power to delete, modify, or substitute provisions in the negotiated settlement agreement—the agreement must "stand or fall in its entirety." Hanlon, 150 F.3d at 1026.

To approve a class action settlement, the court typically conducts a three-step inquiry. See, e.g., Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). First, if applicable, the court assesses whether the parties have met the notice requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. See id. Second, the court determines whether the parties have satisfied the notice requirements of Federal Rule of Civil Procedure 23(c)(2).[1] See id. Third, the court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). Id.

**B. Attorneys' Fees and Costs**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). To calculate reasonable attorneys' fees in a common-fund case, the Court has discretion to utilize either (1) the lodestar method or (2) the percentage-of-the-fund method. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002). Whether to use one method over the other is in the Court's discretion; however, the use of the percentage method in common-fund cases appears to be dominant. Id.

Under the percentage-of-recovery method, 25% of a common fund is the benchmark for attorneys' fees awards. In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Meanwhile, under the lodestar method, a "a lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." Id. at 941 (citing Staton, 327 F.3d at 965). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." Vizcaino, 290 F.3d at 1048. To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. Id. at 1050–51.

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

# III. SETTLEMENT AGREEMENT

The parties finalized and executed the settlement agreement for $945,456.00 on September 12, 2023.  ("Agreement," Dkt No. 88-2 at 15-34; Final Approval Motion at 1-2, n.1.)

## A. Class Members

The Agreement defines class members as the following: All former non-exempt employees employed by Target in the State of California whose employment ended on or after June 10, 2016, through August 17, 2021, (a) received a shift differential pay during the last workweek worked for Target, (b) had vested vacation wages owed upon separation of employment, and (c) upon termination of employment were paid for their vested vacation wages at a rate that did not include the shift differential pay, [and] excludes those individuals who already have resolved the claims asserted in this Action, whether by settlement or adjudication.  ("Class," Agreement § 1.C.)  The Class period is defined as June 10, 2016 through August 17, 2021.  ("Class Period," Id.)  The parties have determined that there are approximately 13,529 Class members ("Class Members").  (Final Approval Motion at 4.)

## B. Monetary Relief

Under the Agreement, Target will pay the gross settlement amount ("Settlement Amount") of $945,456 to fund the following:

1. Target will pay every Class Member the full unpaid vested vacation wages owed.
2. Target will pay $48,000 to settle Plaintiff's PAGA claim, allocated 75% to the California Labor Workforce Development Agency ("LWDA") and 25% to all PAGA group members in equal share.
3. Target will pay Class counsel's actual attorneys' fees (i.e., lodestar) through final approval of $503,750 (but from this amount, Class counsel has agreed to reduce their attorneys' fee request by $14,356.52 to fund the $5.00 minimum payment to the Class Members) along with Class counsel's costs of $20,950 (which is less than costs actually incurred).
4. Target will pay a service award to Plaintiff of $10,000 ("Service Award") and will pay settlement administrator expenses of $47,000.

(Final Approval Motion at 2-3; Agreement § III.)

Within 10 days after the judgment becoming final (which is the first business day following the deadline to file an appeal or the resolution of any filed appeal), Target shall deposit the Settlement Amount, plus Target's share of payroll taxes and withholdings.  (Id.)  The settlement administrator will issue the court-approved payments within 10 days of receipt.  (Id.)  Participating Class Members and PAGA group members will have 180 days to cash a settlement check.  (Id.)  If a person fails to timely cash a check, then the settlement administrator shall issue

the unclaimed funds to the California State Controller's Office in the name of the Class Member or PAGA group member. (Id.; Agreement § III.A-E; III.F.7.)

### C. Attorneys' Fees and Costs

The Agreement provides that the Settlement Amount will cover the Class counsel fees and expenses payment. (Agreement § III.A.)

### D. Class Representative

The Agreement also provides that Ms. Mills will apply for an award of not more than $10,000 as her Class representative Service Award. (Id. § III.D.1.)

### E. Release

Plaintiff, Class Members and PAGA Group Members agree to release any and all claims against the Target Released Parties, as defined in the Agreement. (Id. § III.G.)

### F. Settlement Administrator

The Court appointed Rust Consulting, Inc., as the settlement administrator ("Settlement Administrator"). (Preliminary Approval Order at 13.) Rust Consulting provided Class Notice, processed claims, and administered the settlement. (Agreement § III.E.) Rust Consulting's overall costs total $47,000. ("Mills Decl.," Dkt. No. 99-2 ¶ 23.)

### G. Class Notice

Pursuant to the Court's Preliminary Approval Order, Class Notice consisted of (1) a settlement mailing address, phone line, email address, and website; and (2) direct First-Class mail (and re-mail where applicable) to Class Members. (See Motion for Final Approval at 5-6; Mills Decl. ¶¶ 3-11.) The notice program was designed to provide Class Members with information on the settlement and their rights and options, including a description of the settlement's material terms and a date by which Class Members may opt-out or object to the Agreement. (See Final Approval Motion at 5-6; Agreement, Ex. A.)

### H. Claims, Opt-Outs, and Objections

Rust Consulting mailed Class Notices to 13,529 Class Members. (Mills Decl. ¶ 11.) Rust Consulting re-mailed Class Notices that were returned or deemed undeliverable—re-mailed Class Notices were provided an extended deadline of 14 days after the response deadline date (originally February 26, 2024). (Id. ¶¶ 11-16.) As of the filing of the Final Approval Motion, Rust Consulting received one opt-out, zero objections, and 21 information sheets—this results in 13,528 participating Class Members. (Id. ¶¶ 16-18.) The net settlement amount of $329,312.52

will be used to pay Class Members for their actual unpaid vested vacation wages owed while ensuring that no payment is less than the $5.00 minimum payment.  (Id. ¶ 20.)

## IV. DISCUSSION

### A. Class Certification

The Court previously certified the Class pursuant to Rule 23.  (See MCC Order at 10; Preliminary Approval Order at 13-14); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . ."). Nothing has been put forth to challenge or otherwise undermine the Court's certification.  See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, at *4 (D. Ariz. Apr. 20, 2012) ("The Court has previously certified, pursuant to Rule 23 . . . and hereby reconfirms its order certifying a class."). Accordingly, the Court reconfirms its order certifying the Class for the purpose of final settlement approval.

### B. Final Settlement Approval

#### 1. CAFA Notice Requirements

A court cannot grant final approval of a class action settlement until each defendant complies with the notice requirements under CAFA.  See 28 U.S.C. § 1715(d).  Specifically, "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve" notice of the proposed settlement "upon the appropriate State official of each State in which a class member resides and the appropriate Federal official . . . ."  Id. § 1715(b).

Here, in compliance with CAFA, Target served a notice of settlement on the appropriate federal and state officials pursuant to 28 U.S.C. § 1715 ("CAFA Notice").  ("Wohl Decl.," Dkt. No. 103 ¶¶ 3-4.)  More than 90 days have passed since the date of the CAFA notice—there is no indication that there were any objections.  (Id. ¶ 3.)  Accordingly, the Court finds that Target complied with CAFA's notice requirements.

#### 2. LWDA Notice Requirements

Plaintiff submitted the Preliminary Approval Motion, declarations, the Agreement and Notice of PAGA Settlement to the LWDA in accordance with Labor Code § 2699(1)(2).  (Final Approval Motion at 5; see Dkt. Nos. 88-2, 89.)  The LWDA was given timely notice of the Settlement.  (Final Approval Motion at 5.)  The notice of Settlement invited comment on the Settlement.  Accordingly, the Court finds that the parties complied with the LWDA's notice requirements.

//

### 3. Rule 23(c) Notice Requirements

Class actions brought under Rule 23(b)(3), like this one, must satisfy the notice provisions of Rule 23(c)(2) and, upon class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23 (c)(2)(B).

As discussed above, the Court-approved Class Notice was disseminated to Class Members in January and February 2024. Class Notice consisted of (1) a settlement mailing address, phone line, email address, and website; and (2) direct First-Class mail (and re-mail where applicable) to Class Members. (See Motion for Final Approval at 5-6; Mills Decl. ¶¶ 3-11.) Rust Consulting mailed Class Notices to 13,529 Class Members. (Mills Decl. ¶ 11.) Rust Consulting re-mailed Class Notices that were returned or deemed undeliverable—re-mailed Class Notices were provided an extended deadline of 14 days after the response deadline date (originally February 26, 2024). (Id. ¶¶ 11-16.) As of the filing of the Final Approval Motion, Rust Consulting received one opt-out, zero objections, and 21 information sheets—this results in 13,528 participating Class Members. (Id. ¶¶ 16-18.)

Based on the Final Approval Motion and its supporting documents, the Court finds that the Class Notice and notice procedure fairly and adequately informed Class Members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, as well as Class Members' right to exclude themselves from and object to the proposed settlement. Accordingly, the Court finds that the Class Notice was the best notice practicable under the circumstances. Rule 23(c)(2)(B).

### 4. **Fair, Reasonable, and Adequate**

Under Rule 23(e), "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982). Pursuant to Rule 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Here, the Court held a final approval hearing on July 8, 2024.

To determine whether the settlement is fair, reasonable, and adequate, courts consider several factors, including "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Staton, 327 F.3d at 959 (citations omitted). Moreover, the settlement may not be a product of collusion among the

negotiating parties.  See In re Mego Fin, Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000).  This list of factors is not exhaustive, and "different factors may predominate in different factual contexts."  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

### a. Strength of Case, and the Risk, Expense, Complexity, and Duration of Further Litigation

The strength of Plaintiff's case favors approval.  However, she "acknowledge[s] the risk of proceeding and continuing to litigate this matter."  (See "Plaintiff Decl.," Dkt. No. 99-6; see also Woodard v. Labrada, 2019 WL 4509301, at *9 (C.D. Cal. Apr. 23, 2019).  Without the settlement, the parties must litigate the ultimate merits of the case—a "long, complex, and expensive" process.  Woodard, 2019 WL 4509301, at *9.  Therefore, the risk, expense, complexity, and likely duration of further litigation also favors approval.

### b. Amount Offered in Settlement

The Court reaffirms that the amount offered in settlement weighs in favor of approval.  To determine whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation.  In re Mego, 213 F.3d at 459.  Here, the Court previously considered that the gross Settlement Amount constitutes the estimated damages recoverable at trial.  See, e.g., Ontiveros v. Zamora, 303 F.R.D. 356, 370–71 (E.D. Cal. 2014); Bellinghausen v. Tractor Supply Co., 303 F.R.D. 611, 623–24 (N.D. Cal. 2014).  Every Class Member will receive the full unpaid vested vacation wages owed (and, in many cases, more than owed due to a $5 minimum payment).  (Final Approval Motion at 2.)  This amount is fair and reasonable because it represents "everything that might have been awarded at trial."  (Id. at 1.)  Accordingly, the Court finds that the Settlement Amount provides meaningful relief to Class Members.

### c. Extent of Discovery Completed and the Stage of Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement."  Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998).  "The parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement."  Acosta v. Trans Union, LLC, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (internal quotation marks omitted).  "[A]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases."  Lewis v. Starbucks Corp., 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008).

Here, the Court previously found that the parties "have vigorously litigated the action for over several years, including an appeal to the Ninth Circuit."  (Preliminary Approval Order at 10.)  The parties did not settle until they had briefed class certification and summary judgment motions—they also engaged in substantial discovery, including the production of documents,

written discovery, and multiple depositions. (Id.) Therefore, the Court finds that this factor weighs in favor of approval.

### d. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Because Class counsel recommends the settlement, this factor weighs in favor of approval. (See id. at 8.)

### e. Class Members' Reaction to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 529. Here, there was only one request for exclusion by a Class Member and zero objections to the settlement. (See Mills Decl. ¶¶ 16-17.) Given the low number of opt-outs and the absence of objections, the Court finds that this factor weighs in favor of approval.

### f. Collusion Between the Parties

Finally, the Court reaffirms that there has been no collusion between the parties. (See Preliminary Approval Order at 11-12.) The settlement was negotiated at arms-length under the supervision of an experienced mediator. (Final Approval Motion at 1.) This process is in accordance with Rule 23(e)(2)(B).

All of the factors above weigh in favor of approval, and the Court finds that the Agreement is fair, reasonable, and adequate. The Court hereby **GRANTS** the Final Approval Motion.

## C. Costs and Incentive Award

Under the Agreement, Target will pay Class counsel's actual attorneys' fees (lodestar) through final approval of $503,750.00—Class counsel has agreed to reduce their request by $14,356.52 to fund the $5.00 Minimum Payment, bringing Class counsel's actual fee request to $489,393.48. (Fees Motion at 3.) Pursuant to the Agreement, Class counsel also seeks reimbursement of $20,950.00 in costs. (Id.) Also, Target will pay a service award to Plaintiff of $10,000 and will pay settlement administrator expenses of $47,000. (Id.) The Agreement provides that the Settlement Amount will cover the Class counsel fees and expenses payment. (Agreement § III.A.) Therefore, the Court finds that an award of $489,393.48 to Class counsel and an award of $20,950 for litigation costs is fair and reasonable.

Plaintiff estimates that she spent at least 100 hours on tasks to benefit the Class and argues that her requested service award is appropriate because (1) Plaintiff put the interests of the

class ahead of her own personal interests, (2) Plaintiff gave up a general release in connection with this settlement, and (3) Plaintiff also dealt with many financial and emotional risks pursuing this litigation. (Fees Motion at 14.) Service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. W. Publishing Corp., 563 F.3d 948, 958-59 (9th Cir. 2009). The Court finds that an incentive award of $10,000 for Ms. Mills is fair and reasonable.

The Court hereby **GRANTS** the Fees Motion.

## VII.  CONCLUSION

For the above reasons, the Court **ORDERS** as follows:

1. Plaintiff's Final Approval Motion is **GRANTED**. The parties shall perform their obligations pursuant to the terms of the Agreement and this Order.

2. Plaintiff's Fees Motion is **GRANTED**. Class Counsel shall receive an award of $489,393.48 in attorneys' fees, and $20,950 in costs. Ms. Mills shall receive an incentive fee in the amount of $10,000. The settlement administrator shall receive $47,000.

3. All Class Members who did not validly and timely request exclusion from the settlement have released their claims against the Released Parties, as defined in the Agreement.

4. Except as to any Class Members who have validly and timely requested exclusion, this action is **DISMISSED WITH PREJUDICE**, with all parties to bear their own fees and costs, except as set forth herein and in the prior orders of this Court.

5. Without affecting the finality of this Order, the Court retains jurisdiction over the parties, including Class Members, for the purposes of construing, enforcing, and administering the Order and Judgment, as well as the Agreement itself.

6. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**